FOR THE

## COUNTY OF WASHINGTON.

APRIL TERM, 1847.

---

PRESENT,

Hon. STEPHEN ROYCE, CHIEF JUDGE.
Hon. ISAAC F. REDFIELD,
Hon. MILO L. BENNETT, } ASSISTANT JUDGES.
Hon. CHARLES DAVIS,

---

## MARTIN C. RICE *v.* TOWN OF MONTPELIER.

It has been often determined by this court, in actions against towns for injuries occasioned by the insufficiency of highways, that whether the plaintiff conducted with care and prudence, whether the road was in a sufficient state of repair, and whether the accident occurred mainly through the insufficiency of the road and entirely without fault on the part of the plaintiff are questions of fact, ordinarily mixed, however, with questions of law, requiring comment by the court.

But how far towns are bound to clear away obstructions, natural, or artificial, from that portion of the highway exterior to the wrought way, how far they shall be held responsible for accidents occurring in travelling over this lateral space, either voluntarily, or on account of difficulties existing in the ordinary track, or for such as may occur in consequence of diverging into the neighboring field from a real or supposed necessity, or for such as may arise in attempting to pass a bridge, obviously unsafe, or dangerous, or in fording a stream in such case, are mainly questions of law, calling for special instructions from the court.

Rice v. Montpelier.

In this case it appeared, that the plaintiff was travelling upon the highway in the village of Montpelier, that the travelled path was from twenty to thirty feet wide, that in the ditch, and three feet from the outer edge of the travelled path, and about five or six feet from the fence, a hole had been dug about three feet square and two feet deep,—of which the highway surveyor had notice,—that there was nothing between the hole and the fence but an elevated sidewalk, that there was some snow upon the sides of the road, but none in the travelled path, that sleighs had been driven in the ditch and had made a path there upon the snow at the place where the hole was dug, and that the plaintiff was passing along the highway, in a dark night, with a horse and sleigh, and run into the hole, whereby his horse and sleigh were injured; and it was held, that the jury should have been instructed, that, if they found that the plaintiff diverged from the travelled road without necessity, but merely for the purpose of having the benefit of snow, or that the horse took the same direction from a natural instinct, or from inability to see the road, on account of the darkness, the town should not be held responsible for the consequences which ensued.

This was an action founded upon the statute,—Revised Statutes, chap. 21, sec. 26,—to recover damages for an injury occasioned by the insufficiency and want of repair of a highway. Plea, the general issue, and trial by jury, April Term, 1845,—REDFIELD, J., presiding.

On trial the plaintiff gave evidence tending to prove that in the autumn of 1842, and about eight or ten days before the happening of the injury to the plaintiff, one Roger Hubbard, for his own use and convenience, dug a hole, about three feet square and two feet deep, by the side of the highway in question,—which was in the village of Montpelier; that the hole was three feet from the outer edge of the ordinary travelled path, and about five or six feet from the fence upon the side of the road, with nothing between it and the fence but an elevated sidewalk; that there was some slight snow upon the sides of the road, but none in the middle or travelled path of the road; that sleighs had been driven in the ditch, and had made a path there, upon the snow, at the place where the injury happened; and that the plaintiff, upon a dark night in November, 1842, was passing along upon the highway with a horse and sleigh and ran into the hole, whereby his horse and sleigh were injured. The plaintiff farther gave evidence, that, previous to this accident, the highway surveyor, within the district in which this road lay, had been informed that this hole had been dug, and that it would be

dangerous to suffer it to remain in such a place. It was conceded, that the amount of travel upon this road was large, it being one of the principal streets in the village.

The defendants gave evidence tending to prove, that the road, at the place where the accident occurred, was from twenty to thirty feet wide, and all level for travel; that for more than one hundred rods, upon the same side of the road with the hole, there was at the time a ditch, which was covered part of the way, and in which water run in the spring and fall; that the hole was entirely out of the travelled part of the road, and in the ditch; that there was ample room to pass on the snow upon the side of the road, without running into the hole; that the hole was not dangerous; and that sleighs frequently passed through it without injury.

The defendants requested the court to charge the jury, as matter of law, that if the plaintiff, in a dark night, went out of the travelled path of the road for the purpose of getting upon snow, and by so doing run into the hole and was injured, the town was not liable; that if they found, that the injury would not have happened, if the plaintiff had passed along in the ordinary path of the road, and the plaintiff, for his own comfort and convenience, left the travelled path and went upon the side of the road and into the ditch and run into the hole, and the injury happened, he cannot recover of the town.

But the court instructed the jury, that they were to judge of the sufficiency of the road, at the place where the injury occurred, with reference to the amount and kind of travel, the season of the year, and the length of time the hole had been suffered to remain open; and that, if they considered, under all the circumstances, that the road was not reasonably safe, and that the highway surveyor was made aware of its situation before the injury, the town would be liable for any injury happening in consequence of the defect in the road, after sufficient time had elapsed to put it in repair, if the plaintiff was guilty of no want of common care and prudence in driving into it.

Verdict for plaintiff. Exceptions by defendants.

Rice *v.* Montpelier.

*J. A. Vail* for defendants.

1. Towns ought not to be made liable for any injury received by a person who voluntarily drives out of the travelled path of a road into the ditch. If a person, for his own convenience, drives out of a perfectly level, unobstructed and sufficiently wide path of the road into the ditch, or on to the bank next to the fence, for the purpose of finding snow, the liability of the town ceases, and he must put up with the injury he receives. *Howard* v. *North Bridgewater*, 16 Pick. 189.

2. The charge had a tendency to mislead the jury as to the effect of the notice to the highway surveyor of the hole in the ditch. The liability of the town did not depend upon that fact. *Bardwell et al.* v. *Jamaica*, 15 Vt. 438. What constitutes an insufficient road and a want of common care and prudence should have been explained to the jury; for those were not altogether questions of fact. *Kelsey* v. *Glover*, 15 Vt. 708. *Holley* v. *Winooski Turnp. Co.*, 1 Aik. 74.

3. It is insisted, that it sufficiently appears in the case, that the injury was occasioned by the plaintiff's fault; and if so, he cannot recover. The jury not having been so instructed, the charge was erroneous. *Richardson* v. *R. & W. Turnp. Co.*, 5 Vt. 580. *Farnham* v. *Concord*, 2 N. H. 392.

*O. H. Smith* for plaintiff.

There was no evidence tending to show, that the plaintiff, for his own comfort and convenience, left the travelled path, or what would be the travelled path in the summer. The exceptions show, that the night was dark, and that the plaintiff's horse went along upon the sleigh path, and that, while so doing, the injury occurred. It is but the ordinary case of a dangerous place at the side of a road, and an injury arising therefrom, without any want of common care and prudence on the part of the person injured. There was no proof of that decisive character, which would render it the duty of the court to instruct the jury, that, as they found the fact, so would their verdict be. The case of *Kelsey* v. *Glover*, 15 Vt. 708, is decisive on this question. If the plaintiff was in the exercise of ordinary care and prudence, and the road was in an unsafe condition, there can be no doubt, that the plaintiff is entitled to recover.

60

*Allen* v. *Hancock,* 16 Vt. 230.  *Bigelow* v. *Weston,* 3 Pick. 267.  *Cobb* v. *Standish,* 14 Maine 198.  *Thompson* v. *Bridgewater,* 7 Pick. 188.  *Hunt et ux.* v. *Pownal,* 9 Vt. 411.  *Johnson* v. *Whitefield,* 18 Maine 286.  *Jacobs* v. *Bangor,* 16 Maine 187.

The opinion of the court was delivered by

DAVIS, J.  This action, being for damages resulting from an alleged want of repair in a highway, which the defendants were bound to keep in repair, was tried by jury; and the question before us is, whether the instructions, which the court gave to the jury, were correct, and whether the defendants were entitled to such instructions, as they requested the court to give.

It has often been determined by this court, that whether the plaintiff conducted with care and prudence, whether the road was in a sufficient state of repair, and whether the accident occurred mainly through the insufficiency of the road, and entirely without fault on the part of the plaintiff, are questions of fact, ordinarily mixed, however, with questions of law,—which, of course, invite comment on the part of the court.  Cases, however, not unfrequently occur, where the questions are chiefly questions of law, and in which the court, upon a given state of facts, may direct a verdict.  Such are questions whether a legal highway exists, whether towns, or corporations, are bound to keep them in repair, &c.  The case of *Young* v. *Wheelock,* 18 Vt. 493, was one of this character.  The facts stated in the exceptions in this case were evidently such as not to reduce it merely to a question for the jury, whether the town was liable, or not.  The injury occurred from no defect in the travelled part of the road, but from a hole dug by an individual in the ditch, three feet from the outer edge of the travelled track.  The road was in the village, and was much in use, and was smooth and well made against the place of the injury, and of a width from twenty to thirty feet.  This would seem to be amply sufficient in any place, in a village, or without.

The plaintiff, it appears, was passing the place in a dark night in November, with a horse and sleigh, and no obstacle existed to passing in the usual track, except want of snow.  Snow existed in the ditch, and between that and the made road; and the plaintiff, for no reason apparent, except to get on to the snow, passed along in

the ditch, and his horse run into the hole; and hence the damage occurred.

It would seem, if this verdict is sustained, that towns must not only be bound to construct good and sufficient roads, of sufficient width, and properly guarded, so as to make travelling safe against all ordinary accidents, but must also put and keep the ditches by the side of the road, usually fitted to conduct water from the road, in an equally practicable condition for travelling; so that, when any one prefers, to obtain snow, or avoid dust, or from any other reason, to travel one side of the road, rather than in it, he may do so under the same security and indemnity as those who travel in the way provided for them. This, we think, would be an unwarrantable extension of the liabilities of towns. The doctrine hitherto recognized is sufficiently liberal, and in many cases virtually makes towns insurers of travellers against ordinary accidents. It is hardly reasonable to require, in addition to the duty of making and sustaining practicable roads in the numerous places where the exigencies of the public require, that they should provide snow out of season to cover them, however convenient it may be for purposes of locomotion.

It is urged, that the case of *Kelsey* v. *Glover*, 15 Vt. 708, is similar to the present, and justified the reference of the whole question to the jury. In that case there was a conflict in the testimony upon the point, whether there was, or was not, a travelled track of sufficient width between the tree tops, which projected on each side. But assuming, as the court did, that this point was with the defendants, the court left it to the jury to say, whether the position of the tree tops, or one of them, contributed to change the direction of the horse running away upon the made road, and whether, in that event, their position, with the length of time in which they had been suffered to remain thus, evinced culpable negligence on the part of the town. The jury found these facts in favor of the plaintiff; and although it is evident the court were not satisfied with the result, still they did not feel at liberty to say that these questions were improperly submitted to them. Had the plaintiff in that case, without necessity, travelled out of the worked way, though wide enough, and run against the tree tops and killed his horse, it would have presented a

case widely different from the one actually presented, and it is presumed one which would have called for a different charge.

How far towns are bound to clear away obstructions, natural, or artificial, from that portion of the highway exterior to the wrought way, how far they shall be held responsible for accidents occurring in travelling over this lateral space, either voluntarily, or on account of difficulties existing in the ordinary track, or for such as may occur in consequence of diverging into the neighboring fields from a real or supposed necessity, or for such as may arise in attempting to pass a bridge obviously unsafe and dangerous, or in fording a stream in such case,—these and similar circumstances present mainly questions of law, calling for special instructions from the court. Cases under most of these heads have occurred and are reported in our sister states. These decisions may have been made under statute provisions different from our own. Whether so, or not, it is unnecessary to predicate any thing in advance as to their applicability to our circumstances.

The case of *Green* v. *Danby*, 12 Vt. 338, was not cited by the plaintiff's counsel, but perhaps may be thought to bear upon the present question. There the plaintiff diverged a mere trifle from the wrought way, in consequence of an accumulation of snow, passing where the principal travel had passed for weeks; and the question arose on the acceptance of a report of a referee. The necessity of the divergence distinguishes it from the present case, to say nothing of the slight degree of it.

In *Cobb* v. *Standish*, 14 Maine 198, the plaintiff recovered, where the horse was attracted, or guided, to a pool of water, by the side of the road, but partly within and partly without the limits of the highway ; and the place having a muddy bottom, the horse sunk down and perished; the travelled road was good and the space between the road and water unobstructed. It was put by the court to the jury to say, whether leaving so deceptive and attractive an object accessible, without being guarded, evinced culpable negligence on the part of the town. These instructions were sanctioned by the supreme court. The decision seems an extraordinary one; and although it involved a question of fact, proper to be passed upon by the jury, still I am persuaded such a case here would be regarded as one eminently calling for directions from the court. Whether,

under proper directions, such a verdict would be likely to be rendered in our courts, I will not undertake to say. In *Johnson* v. *Whitefield*, 18 Maine 286, it was decided, that towns, if they suffer timber, or other deposits, to lie by the side of the travelled road, and within the highway, as laid, by which, in consequence of sudden fright, to which horses are liable, a horse and carriage were precipitated from the road on to the timber, and the carriage was broken, are responsible, although the travelled road was sufficiently wide and well made. A distinction was taken between such artificial and natural obstacles. It is unnecessary to say, whether that case would be regarded as law here. If it were, it is distinguishable from the present in the necessity, which forced the team from the road. These cases show, that a very liberal rule is established in Maine, in favor of parties injured.

In New-Hampshire a much more stringent doctrine prevails; as appears by the case of *Farnham* v. *Concord*, 2 N. H. 392 ; where the town was held not liable for an injury occasioned by an excavation by the side of the road, although the travelled way was only twelve feet wide, and another excavation existed on the opposite side, and the whole vicinity, by the side of the river, was covered by nearly two feet of water. The court thought it was no fault of the town, that the guide, even under these circumstances, conducted the plaintiff's team out of the travelled way. The rigid doctrine of this case has not, it seems, been at all modified by subsequent decisions in that state.

In Massachusetts the decisions assimilate better with the law in New-Hampshire, than that of Maine. In the case of *Howard* v. *North Bridgewater*, 16 Pick. 189, some large stones were, for many years, permitted to lie by the side of the road, about seven feet from the travelled track, and within the highway limits ; when the plaintiff's horse, becoming frightened by the failure of some part of the waggon, to which he was attached, ran violently upon these stones and broke his leg ; the town was held not responsible, although their agents had notice of the position of the stones. In a recent case, reported in 8 Metc. 388, *Tisdale* v. *Norton*, it was decided, that the town was not liable, where the injury occurred in attempting to pass through a pond some distance from the road, across which a deep gully, several rods wide, had been made some days before by a fresh-

et, and which, of course, rendered it impassable. The Massachusetts statute does not vary materially from ours, except that it gives double damages in case of injury through defect or want of repair in highways, after reasonable notice.

The case cited above from the 16th of Pickering very nearly resembles the one under consideration; except that in the former the travelled part of the road was only about half as wide as in the latter; but the obstructions complained of had been in the same position about twenty years. We think the doctrine laid down in that case is the correct one. It does not militate against that of *Bigelow* v. *Weston*, 3 Pick. 267; where the plaintiff recovered for an injury, which occurred under similar circumstances, except that the stones had been recently placed upon the road for the purpose of re-building a bridge, and so near on the opposite sides as to leave but eleven and a half feet for travelling.

We think the jury should have been instructed, that, if they found that the plaintiff diverged from the travelled road without necessity, but merely for the purpose of having the benefit of snow, or if the horse took the same direction from a natural instinct, or from inability to see the road on account of the darkness, the town should not be held responsible for the consequences which ensued.

The result is, the judgment of the county court is reversed.