WHEELER VS. THE TOWN OF WESTPORT.

DEFECTIVE HIGHWAY; *Liability of town for injuries.* CONTRIBUTORY NEGLIGENCE.

1. The "insufficiency or want of repairs" in a highway, which renders a town liable for injuries resulting therefrom (R. S., ch. 19, sec. 120), exists wherever the road is not a reasonably *safe* and *convenient* one, in view of the amount and character of the travel thereon, the nature of the country through which it runs, etc.

2. The question whether the highway, at the time and place of the injury complained of, was insufficient or out of repair, is one of fact for the jury, under proper instructions.

3. At a certain point in a highway, whose general width was less than fifty feet, a strip of land nearly or quite rectangular projected into the general line of the highway on one side, to a depth of from fourteen

to twenty feet; and there was a line of boulders from one to two feet high along the three sides of the strip adjoining the road. The traveled track ran close to these boulders on all three sides of said strip, its direction being twice changed abruptly to conform thereto. At a distance of *nine* feet from said row of boulders, on the other side of the traveled track, the road was made impassable by deep gullies, The highway was considerably traveled, was over an open prairie and might easily have been made passable in its whole breadth of thirty feet along said projecting strip: and the strip itself might have been condemned, and the road opened over it. *Held,* that upon these facts the jury might well find the road insufficient.

4. To render the town liable, the object causing the injury need not be within the highway, if so connected with it as to affect the safety and convenience of those using the traveled track.

5. But, although there be a defect or obstruction in the highway as located, yet if it is not in the traveled part of the road, *nor so connected with it as to affect the safety or convenience of those using the traveled path,* the town is not responsible for the injury.

6. In most cases the question of contributory negligence on the plaintiff's part, is one of fact for the jury.

7. Towns are not required to make highways suitable for travel for their entire width, but only a part thereof, sufficient in extent for the safety and convenience of travel. And it is a well-settled general rule, that if travelers voluntarily and without cause deviate from the *traveled track,* the town will not be liable for resulting injuries.

8. The above rule, and the rule that the town is not bound to furnish a separate track for foot travelers, will not necessarily prevent a recovery for injuries received while plaintiff was walking outside of the traveled track, but so near it that he had a right to presume that the place where he walked was safe for travel; the injuries being caused by obstructions which rendered the road unsafe for persons using that part of it which had been or *ought* to have been prepared for travel.

9. Plaintiff's general acquaintance with the obstruction causing the injury will not *necessarily* prevent his recovery, if, under the circumstances, he might still, in the exercise of ordinary prudence, have been unaware of his proximity to it.

10. Ordinary care is that which the great mass of mankind, or ordinarily prudent men, usually exercise in matters affecting their own interests.

11. Plaintiff was knowingly walking on the grass outside of the traveled track, within a foot or eighteen inches thereof, and had been so walking for some distance before encountering the sharp angle of the line of boulders aforesaid, over which he stumbled and was injured. He

lived on the road, about half a mile distant, and was familiar with it and with the situation of the boulders. It was a rather dark night; the boulders were not visible; the traveled track was wet and sticky. He was a physician, and had been called out to visit a sick person, and was walking close by the side of, and conversing with the messenger who came for him, who was walking on the track leading a horse; and he testified that he was not thinking of these stones when he came upon them. *Held*, that upon these facts the court did not err (as against the town) in submitting to the jury the question of contributory negligence.

APPEAL from the Circuit Court for *Dane* County.

Action for damages resulting from injuries sustained by reason of defective highway. The complaint alleged, that defendant, the *Town of Westport*, was a duly organized town, whose duty it was, at all times, to keep its highways in repair. That at a point on the highway, in said town, where the injury in question occurred, a large number of rocks or boulders were left lying across the south half of the road, and extending into the traveled portion thereof; that at this point the north half of the road was much cut up by travel and ruts, rendering it unsafe for travel, and forcing travel over to the south side; that the plaintiff, *Wheeler*, on the night of the accident, was lawfully traveling on said highway, and without negligence or fault on his part, was precipitated over the boulders at the point in question, rendering him sick and disabled for six months, and crushing the thumb of his right hand so that amputation became necessary; that plaintiff was a physician with a lucrative practice, upon which he was dependent for support, and that by reason of the amputation of his thumb, he would always be prevented from performing surgical operations, and would never regain the use of the whole hand in his profession; wherefore plaintiff claimed damages in the sum of five thousand dollars. The answer, after admitting certain allegations of fact, alleged that the injury sustained by plaintiff, was caused or directly contributed to, by his own negligence, and not by any fault on the part of defendant. The nature of the evidence and

the instructions to the jury sufficiently appear in the opinion. Verdict for plaintiff with damages at $1,000. A motion for a new trial and to set aside the verdict being overruled, and judgment being ordered on the verdict, defendant appealed.

*Vilas & Bryant*, for appellant, argued that the proof showed no "insufficiency or want of repairs" in the road, for which plaintiff was entitled to recover. The town had discharged its duty when it had constructed and maintained a traveled track sufficiently safe and passable, and a traveler knowingly departing therefrom for any cause, except inevitable accident, takes all risk of injury upon himself. *Ward v. Town of Jefferson*, 24 Wis., 342; *Rice v. Montpelier*, 19 Vt., 470; *Macomber v. Taunton*, 100 Mass., 255; *Dickey v. Telegraph Co.*, 46 Me., 483; *Howard v. N. Bridgewater*, 16 Pick., 189; *Kellogg v. Northampton*, 4 Gray, 65; *Shepardson v. Colerain*, 13 Metc., 55; *Whitney v. Town of Essex*, 38 Vt., 270; *Farnum v. Concord*, 2 N. H., 392; *Smith v. Wendell*, 7 Cush, 499; *Hall v. Unity*, 57 Me., 529.

To the point that, plaintiff's negligence having contributed to the injury, he was not entitled to a recovery, counsel cited *Achtenhagen v. Watertown*, 18 Wis., 331; *Galpin v. C. & N. W. Railway Company*, 19 Wis., 604; *Nicks v. Marshall*, 24 Wis., 139; *Dressler v. Davis*, 7 Wis., 527; *Waters v. Wing*, 59 Pa. St., 211; *Hill v. New Haven*, 37 Vt., 501; *Barber v. Essex*, 27 Vt., 62. The law extends no especial protection to foot travelers, and they can only claim liability in such cases as other travelers might. *Whitney v. Essex*, 38 Vt., 270.

*Smith & Lamb, contra*, contended, among other things, that the town was liable if a rail or barrier were necessary for the proper security of travelers, and would have prevented the injury. *Palmer v. Andover*, 2 Cush., 600, approved in 22 Wis., 679; *Snow v. Adams*, 1 Cush., 443. Whether obstructions in a highway render it unsafe, though the obstructions are not in the traveled part, is a question for the jury, and the width of the way may be an essential element in determining this question. *Bryant v. Biddeford*, 39 Maine, (4 Heath), 193. Towns are not

generally bound to make the whole that is laid out as a high-way passable; but if an obstruction out of the traveled part, renders the road unsafe, the town will be liable, unless they make the proper safeguards or railings. *Willey v. Portsmouth*, 35 N. H., 303. The want of a sufficient railing barrier and protection, to prevent travelers passing upon a highway from running into some dangerous excavation or pond, or upon a wall, or stones, or other dangerous obstructions, without its limits, but in the general direction of the travel thereon, may properly be alleged as a defect in the highway itself. *Davis v, Hill*, 41 N. H., 329, approved in 42 N. H., 197, and also 22 Wis., 680.

To the point that where plaintiff was familiar with the alleged defect in the road, the degree of care necessary on his part was properly left to the jury, counsel cited *Smith v. Lowell*, 6 Allen, 39; *Davenport v. Ruckman*, 10 Bosw., 20; *Glidden v. Reading*, 38 Vt., 52; *Humphreys v. Armstrong Co.*, 56 Pa. St., 204. Upon the question of liability for injuries received in the night time, from objects that might not be considered unsafe in the day, counsel cited *Bagley v. Ludlow*, 41 Vt., 425.

Dixon, C. J.   The court experiences no difficulty whatever in determining as to the weight and sufficiency of the evidence upon which the jury found that the highway was defective at the place where the injury complained of was received. Indeed under almost any circumstances, or with any instructions, however favorable to the town, which any court or judge would have been likely to give, a verdict to the contrary would have greatly surprised us. The essential idea of "insufficiency or want of repairs" of any road, for which, if damage shall happen to any person, his team, etc., the statute declares he shall have the right to sue for and recover the same against the town, is that the road shall not be and remain in a condition of unsafety and inconvenience. Safety and convenience are the essential requisites of a good and sufficient highway, and it is to

promote and secure these that the statute has given.the remedy against the towns. By this is intended, of course, reasonable safety and convenience according to circumstances, and, since with respect to roads as to nearly everything else, circumstances differ and exist in great variety and change, it follows that there is no fixed rule on this subject — no unvarying standard of sufficiency and repair by which the condition of every road is to be governed and decided. The circumstances by which this question of safety and repair is affected, and the duty and liability of the town determined, have been fully and ably considered and discussed in the cases of *Johnson v. Haverhill*, 35 N. H., 74; *Hubbard v. Concord*, id., 52; *Graves v. Shattuck*, id., 257; and *Winship v. Enfield*, 42 N. H., 197.

Some of the more important of these circumstances have relation to the nature and surface of the soil or country, over which the road is made, the natural obstructions and obstacles to be overcome, the materials of which the way must be constructed, its situation and locality, and the kind and amount of public travel which takes place over it. What would be considered a reasonably safe and convenient road in a sparsely populated rural district, where there is but little public travel, might and generally would not be so regarded in the midst of denser populations, or in the crowded thoroughfares in or near to cities or large towns and villages, where increased facilities and superior accommodations are required for the great number of travelers and vehicles by which the highway is almost continuously occupied. So, too, what may be looked upon as a reasonably safe and convenient passage in a broken or mountainous region, where the road has to be made over steep hills and through rugged valleys, along the narrow margin of streams, or upon the sides of declivities or rocky or precipitous places, might not be so considered where it lies through a plain or level country, or over the undulating and smooth surface of an open prairie. No one would expect, for example, to find the same ease and facility, the same safety and convenience of

travel, upon a road running up and down the bluffs and steep hill-sides bordering upon the Mississippi, and other rivers flowing into it in the western part of this state, or over and through the pine or other forests, or through the cedar and tamarack swamps in the northern part of it, as should be found upon the roads across the prairies, and through the openings in the central and southern portions of the state.

It is obvious from the nature of the subject under consideration, that what would constitute a dangerous or indictable obstruction or incumbrance upon one road, might not be so considered upon another. It is obvious that a way which would be deemed narrow and insufficient, and by which the traveler would be unnecessarily exposed to accident and injury in one case, might not be so deemed in another, or under different circumstances. A tree or stump standing near the wagon path in a forest road, or a large rock, or the perpendicular surface of rocks in like position, in a road made or excavated in the side or along the brow of a hill or bluff, might not be regarded as dangerous, whilst the same objects situated in or near another road, might become extremely so. Travelers are instinctively lulled into a feeling of security, and consequent inattention, or awakened to a sense of danger, and the exercise of more care and watchfulness by the physical aspect and natural condition of things around them, and it is evident that these circumstances must be taken into account in considering the sufficiency of a highway, and in determining whether it has or has not been safely and properly prepared and put in order. The same smooth surface, the same freedom from danger and inconvenience would not be expected in riding over a corduroy road, where that kind of road is proper, as in riding over a Nicholson pavement, or a road which has been graded, graveled or planked. No one anticipates the same space or breadth of ground for travel on roads constructed in narrow valleys or ravines, or along the sides of hills, or through dense woods or swamps, as on roads made in places where these natural imped-

iments and difficulties do not exist. In localities of the former description, the nature and situation of all surrounding objects are such as to warn the traveler of the possibility or probability of danger, and to guard him against it, and to guide and direct him in the way he must pursue in order to avoid it. All things around him are such as to indicate where his road lies, and that he must keep wholly within it in order to insure safety. But everybody knows that in the open prairie or in the cleared plane country, where greater accommodations and more spacious ways are required and expected, the presence of the same object, tree, stump, stone or log, in or near the traveled track, would be regarded as a serious obstruction, and often very dangerous and inconvenient. Almost every person has experienced great danger from the presence of what are called " grubs," in the traveled part of such roads in this state. It is with respect to conditions and considerations like these, and others which will readily suggest themselves, that highways are said to be safe and sufficient, or unsafe and insufficient, according to circumstances.

It has been well observed in one of the cases above referred to, that " no highway, perhaps, can be pronounced intrinsically perfect; so free from obstructions, insufficiencies and want of repairs, that human art and skill cannot improve it; yet the rudest cart-path may be, relatively, a perfect highway. Between the highly wrought thoroughfare of the city and the roughest road in the sparsely peopled portions of the country, there are numerous gradations in reference to the intrinsic character of highways, and each may, nevertheless, be considered, for the locality where it exists and under the circumstances of the case, to be a highway free from any of the obstructions, insufficiencies or want of repairs intended by the statute. The question whether the highway, at the time and place of accident, was obstructed, insufficient or out of repair, is one of fact for the jury, under the instructions of the court as to what is meant by those terms as used in the statute. This question of

fact, whether the alleged defect constituted such an obstruction, insufficiency or want of repairs, ordinarily depends upon a variety of considerations, tending to furnish an answer to the inquiry, was the highway at that time and place in a reasonably safe and suitable condition for the customary travel passing upon it, under all the circumstances attending the particular case?"

The foregoing remarks have been elicited, and attention directed to the considerations and circumstances by which the duty and liability of towns may be judged of and determined, because of the position assumed in behalf of the town here, and urged and insisted upon before this court, that the highway in question was, at the place of accident, in all respects safe and suitable, and such as answered the requirements of the statute. It clearly appears in evidence, that the road at that place was only about nine feet wide, that is, the beaten wagon track or traveled part of it over which all teams and carriages were obliged to pass and repass. It was a way barely admitting the passage of a single team, with no room or suitable ground on either side for travel to diverge or vary. With no turn or change in the direction of the road, there was at that point a variation from a straight line upon one side of it, causing a sharp angle in the line or boundary on that side. The deviation was, according to the the testimony of witnesses, at a right angle for the distance of from fourteen to twenty feet *into* the highway, or what would otherwise have been the highway had it continued of the same width in the direction in which the plaintiff was traveling, and then was formed another right angle by the change of line back again, according to the course of the road, thus leaving the highway from fourteen to twenty feet narrower beyond the point of acccident than it was at that point. The road in the widest part appears to have been something less than fifty feet, so that in the narrower portion it was a little upwards of thirty feet in width.

The projecting angle, or that formed in or nearest the high-

way, was in, or very nearly in, the course and direction of travel to that point along the wider portion of the road, in which the plaintiff was traveling. There had formerly been a fence on that side made of large stones and boulders, varying from one to four feet in length, and from one to ten feet in height, laid upon the ground and constituting the foundation, and above those were posts with two boards nailed upon them. The posts had rotted off and the boards been removed, and all the fence, except the boulders, had disappeared some years before. A by-law or ordinance of the town had dispensed with fences along the highways. The row of boulders extending apparently into and turning a right angle near what seemed to be the center of the highway, still remained, and constituted the boundary of the traveled track on that side, approaching so close to the track that the wheels of wagons and carriages frequently grazed and came in contact with them, as shown by marks found upon them. On the opposite side and only nine feet from the angle in the row of boulders, was a gully running parallel to the track, worn by the wheels and washed by the rains about twelve inches deep, and about four feet outside of that still another like gully, and so there were several gullies of the same description extending to the line of the road on that side, and the surface of the ground where these gullies were, was covered with loose stones. Outside of the nine foot space, either way, the road was unsafe and almost wholly impassable. It was an *open prairie* road, easily made safe and passable for its entire width of thirty-three feet at that place. It was a road of very considerable travel, leading to a railway station, only a mile or two distant.

Now, it occurs to us, to observe that the nine foot space left for travel, although it was possible to pass it with safety by day light, and perhaps by one familiar with the road, with exceedingly great care and caution in a not over-dark night, was altogether too narrow and limited a way to satisfy the demands of public safety and convenience upon such a road. With every

precaution which common ingenuity and foresight could have suggested to insure the safety and convenience of travelers in so narrow a road, it would still have seemed that the town had failed in the performance of its duty under any circumstances or in almost any locality, because the traveled way was so narrow and unsuited to public accommodation and safety. There may be great peculiarities of place or circumstances of an extraordinary character, where a nine foot passage, otherwise made reasonably safe, would be regarded as suitable and proper, but certainly nothing of the kind appears here. Under the circumstances of this case, a space of three times the width made suitable and convenient for travel would have been no more, as it seems to us, than the most ordinary prudence and forethought would have dictated as the clear duty of the town. In *Bigelow v. Weston*, 3 Pick., 267, when large stones for the purpose of rebuilding a bridge had been hauled under the authority of the selectmen and placed on each side of the causeway, so as to leave only eleven feet and a half in breadth for carriages to pass between them, and the plaintiff's horse shearing from the stone on the right hand side, ran over another on the left, by which his chaise was overturned and broken, it was held the highway was insufficient, and that the town was liable for the injuries sustained.

But aside from the narrowness of the way, the circumstance of greatest dereliction on the part of the town in this case, was the situation and proximity to the way of the sharp corner of boulders so incompatible with any reasonable degree of safety and convenience on the part of the traveling public. It is very true, as argued by learned counsel in this behalf, that towns are not required to keep highways in their entire width, commonly four rods, free from obstacles and obstructions, and in a condition suitable for travel, but it is at the same time equally true, that there may exist dangerous defects and obstructions outside of the traveled path, depending on circumstances. Much depends on the nature and situation of the alleged obstruction, and

whether it is plainly to be seen or not. A tree or the corner of a building standing at the place where the boulders angled, might not have been very unsafe or dangerous. A pit or excavation at the same place would have been exceedingly so. The boulders, not high enough to be distinctly seen, especially in the night time, but yet of sufficient magnitude to trip and prostrate a team or foot passenger, or overturn or break a wagon, were scarcely less dangerous than the pit would have been. It has been laid down as a correct rule in such cases, that even though there be a defect or obstruction in the limits of the highway, as located, if it is not in the traveled part of the road, *nor so connected with it as to affect the safety or convenience of those using the traveled path*, the town is not responsible for any injury sustained by one in consequence of it. *Morgan v. Hallowell*, 57 Maine, 376 ; *Shepardson v. Colerain*, 13 Met., 55 ; *Smith v. Wendell*, 7 Cush., 498 ; *Kellogg v. Northampton*, 4 Gray, 65. It cannot be said that the boulders here were unconnected with the traveled path. They were connected with it, and so closely as to make it almost true that they formed a part of it. There was no fence or other visible object to indicate the boundary or limit of the highway on that side, or the particular course to be pursued by the traveler in order to avoid collision with so dangerous an obstacle in or so near the apparent center of the highway, where obstructions of the kind are least expected to be found. Had the posts and boards above the boulders forming part of the old fence, still remained, they would doubtless have afforded some protection, at least under some circumstances. They would have served to indicate that the highway was narrower at that place than at others, and that the traveler must change his course to keep within it. The boulders were on or very near the true line of the highway, but within the general course and direction of the travel, and where travelers were accustomed to pass, and rendered the traveling needlessly unsafe and perilous.

In *Coggswell v. Lexington*, 4 Cush., 307 it was held that the

defendants were liable for an injury happening to a traveler while in the exercise of ordinary care, in consequence of driving his wagon against a post, which stood *without* the limits of the highway, but near the line thereof, and within the general course and direction of the travel thereon, and which rendered the traveling dangerous, the facts appearing that there was nothing to indicate that the post was not within the way intended for public travel, and that the town, having reasonable notice of the course of the travel, and that the post was dangerous to travelers, suffered it to remain an unreasonable time.

*Jones v. Waltham*, 4 Cush., 299, affirms the principle that it is the duty of towns to erect fences and barriers against pits and excavations wholly outside of the highway, but which are so situated as to make travel in the highway unsafe, in like manner as railings or barriers are required in the case of a bridge, causeway, etc.

The same principle was distinctly affirmed in *Hayden v. Attleborough*, 7 Gray, 338, where the plaintiff sued for an injury occasioned by her driving, in the evening, into a cellar beyond the limits of the highway, where such limits were not indicated by any visible objects, and there was nothing to show a person driving thereon in the evening, that the course he was pursuing was not in the way intended for public travel, the cellar in question being within the general direction of the travel or route over the highway, and so near thereto as to render the same unsafe.

And the same doctrine was also asserted in *Davis v. Hill*, 41 N. H., 329, in which it was decided, that the want of a sufficient railing or barrier to prevent travelers passing upon a highway from running into " a large number, to-wit, twenty rocks of large size, to wit, of the height of two feet and of the width of two feet, which said rocks were situated and projected near said highway," without its limits, but in the general direction of the travel thereon, was properly alleged as a defect in the highway itself. See also, *Winship v. Enfield, supra ;*

*Bartlett v. Hooksett*, 48 N. H., 18 ; and *Woodman v. Nottingham*, 49 N. H., 387, and authorities cited.

In view of these authorities and of what, upon reason and justice, and according to the common experience of travelers, must have been held to be the law without them, we must say, that we should have been very greatly surprised had the jury· found that the highway in question was a safe and proper one. No work appears to have ever been done upon it at the place of injury, but travelers were left to make their way as best they could in the narrow passage between the sharp corner of boulders on one side, and the gullies and loose, impassable stones on the other. With the slightest care and forethought on the part of the authorities of the town, the danger should have been seen and provided against, either by the removal of the boulders, or the erection of a suitable barrier, or, what would have been more in accordance with the duty of the town, the removal of the obstruction and widening of the road to the usual width throughout that part of it. Had an information or indictment been presented against the town, conviction must have followed ; for the road was at that place, and under the circumstances, as it seems to us, really a public nuisance.

The authorities cited and relied upon by counsel for the town, like *Rice v. Montpelier*, 19 Vt., 470, and others of that class, are clearly distinguishable. In those cases the towns had performed their duty by the construction and maintenance of a traveled track, of sufficient width and capacity—one of reasonable safety and convenience—out of which the traveler, without necessity, but for purposes and objects of his own, had voluntarily turned and fallen upon a defect or obstruction, not in, but out of the general course and direction of travel, and not connected with such travel, but in a place where persons and vehicles were not accustomed to pass. The distinction between cases of that kind, and obstructions so situated and so fallen upon, and cases like the present, where the obstruction was directly in the general course of travel, and near to and

immediately connected with the traveled track, seems very obvious. See *Bayley v. Ludlow*, 41 Vt., 432, 433.

The other question involved in this case, is that as to contributory negligence on the part of the plaintiff, and it is one which we must confess is, to our own minds, by no means so clear. Like that already discussed, it is, in general, a question of fact for the jury; and the inquiry here would seem to be, whether the evidence of such negligence was so clear and uncontradicted that there was nothing to submit to the jury upon the point, or whether the proof was such that a verdict in the negative cannot be sustained. Connected with this inquiry are also some others, arising out of exceptions to instructions given by the court, and to refusals of the court to instruct as requested by the defendant.

It was observed by the court in *Palmer v. Portsmouth*, 48 N. H., 267, which was an action of this same kind, that " almost in the nature of the case, evidence of the occurrence of an injury upon the highway cannot be laid before a jury, without its showing something as to the care of the sufferer; and the case must be very extraordinary where there is not evidence competent and proper to be submitted to the jury. If there is evidence which the jury may rightfully consider, the question is for their decision."

And in another like action, *Robson v. Rockport*, 101 Mass., 98, the court say : " It is the duty of the court to decide such cases as presenting merely a question of law upon the sufficiency of the evidence in law to authorize a verdict for the plaintiff. But the circumstances under which accidents occur must vary indefinitely ; and where a case arises in which there is some substantial evidence upon which it would be competent to find a verdict for the plaintiff, a question of fact is presented which is to be submitted to the jury. In all the cases this distinction has been kept in view. From the nature of the case it must often require a very careful analysis of the evidence to decide

whether it raises a question of fact for the jury or a question of law for the court."

The charge of the court, the leading propositions of which are conceded to be correct, was very full and explicit, and need not be repeated here. The facts relied upon to show negligence in the plaintiff, are, that he was walking on the grass alongside of the traveled track or wagon road, and within about a foot or a foot and a half of it, and had been for some distance before he came upon the sharp angle of boulders situated as above stated, and, stumbling, fell over them and received his injury. He lived upon the same road about half a mile distant, and was familiar with it, and knew that the boulders were there, and how they were situated with reference to the traveled track. He knew at the time where he was walking, and that it was on the grass and not in the track, but near to it. ·He was a witness upon the stand, and testified to these facts, but at the same time testified that he was not thinking about the stones when he came upon them. The accident happened about midnight of a dark or darkish misty night in the month of April, when the stones were invisible and when the wagon path was wet and sticky, making it disagreeable to walk in it. The plaintiff is a physician, and was called out at that time of night to visit a sick person, and was walking close by the side of, and engaged in conversation with the messenger who came for him. The messenger was walking in the wagon path, leading a horse.

It is earnestly contended that the fact that the plaintiff was knowingly outside of the traveled track at all, and walking where he was, was negligence in law, or conclusive evidence of want of ordinary care on his part, which will preclude a recovery. It is undoubtedly a well settled general rule that it is incumbent on travelers to keep within the traveled track, and if they voluntarily and without cause deviate from it, they take upon themselves the risks of that kind of travel, and the town will not be held responsible for injuries which may be thus oc-

casioned them. This was so decided by this court in *Kelley v. Fond du Lac*, 29 Wis. The court below so instructed the jury as a general rule of law, and likewise informed them that a foot passenger upon a country road, must accept and use the traveled track in the same manner as other travelers, and can hold towns responsible only as other travelers might. · But the court furthermore said, that while such was the law and the jury was so instructed, and that towns were not compelled to build a walk for foot passengers, "I have by no means instructed you that they or other travelers are precluded from recovering if they are on the side of the traveled track." And the judge proceeded: "I suppose it has happened, in the experience of all of you, that you have found the highway, at times, by the side of the traveled track, the best and safest portion of the road for your manner of traveling; and while I have charged you, as asked by defendant's counsel, that adjoining land owners are not obliged to fence along a highway, I have by no means meant to charge you that the town is absolved from keeping proper guards to prevent travelers from walking or driving into or upon such dangerous places as travelers by night or day might come into or upon, while traveling in the exercise of ordinary care." And the court further said: "It would excuse no town from the performance of this obligation, if it should be shown that other towns had not done so."

And the judge next proceeded to say: "It seems, from all the proof, if I have understood it, and it is for you to say for yourselves whether I have or not, that the plaintiff was traveling in the highway from the west toward the point where he alleges the accident occurred, alongside of the wagon track, the best part of the road for a foot passenger to travel upon, the wagon track being somewhat rough and muddy, and as he claims, was injured when he came to the point where all the evidence shows some quite large boulders were lying along from the south up to or very near the traveled wagon track, and that from this last point other large boulders were lying

along in an eastern direction, very near the wagon road in that direction, and forming with the line of stones laid along from the south, a sharp angle very near or directly up to the wagon road, and that he fell over these stones directly on, or at any rate, very near the corner, and suffered the injury complained of.

I have been asked to charge you that, because he was so traveling, and because the objects over which he stumbled were of the character they were, and where they were to the plaintiff's knowledge, he cannot recover. I cannot so instruct you. There is no pretext that he was not in the limits of the highway up to this point, as I understand it, and I submit it to you as a question of fact whether the obstructions complained of were such and so situated in the road, or at its side, without guards to prevent persons from walking or driving upon them, that persons riding, driving or walking along the road from the direction he was, with ordinary prudence by night, as well as by day, were liable to walk or drive upon them. If you so find, the town is liable, if you find that the plaintiff was in the exercise of ordinary care and prudence on his part. Whether the plaintiff did exercise such care and prudence, is also a question of fact in view of the proof in this case for you to determine.

"Ordinary care and prudence is, of course, more than the careless, indifferent and reckless observe in the transactions of life. It is not that extreme caution which the extremely cautious and prudent manifest. It may, I think, be properly denominated as a medium between these two extremes, or to be such caution and prudence, as the great majority of mankind observe in their own business and concerns.

"In this view, judge of the plaintiff's conduct at the time, in the light of all the evidence, and facts and circumstances proven, and say whether or not he was guilty of a want of ordinary care. You will have the right to consider all the circumstances; that it was in the night, the state of the weather, whether it was dark or light; the fact that he knew of the ob-

struction, as well as the fact that he might have misjudged the location, and all the considerations that will naturally address themselves to your minds upon the question."

The foregoing instructions were severally excepted to by the defendant, and others embodying different and inconsistent views of the law requested, and such request refused.    Particular exception was and is taken to that part of the charge in which the judge spoke of the place where the plaintiff was walking alongside of the wagon track, as " the best part of the road for a foot traveler to travel upon, the wagon track being somewhat rough and muddy."

It will be seen from the above instructions, that the precise point of inquiry presented is, whether under any circumstances, or under the particular circumstances by which the plaintiff was surrounded, traveling along the kind of road he was, a foot passenger is or may be justified in deviating in the slightest degree from the traveled track, for the causes and from the motives which led the plaintiff to do so, and whether the town may still be held liable for injuries received by him, the jury having found that there was no want of ordinary care and prudence on his part.    The question seems to be, whether the rule that a person must keep within the traveled way is a rigidly inflexible one, admitting of no exceptions and subject to no modifications as to time, place, circumstance, condition, habit or mode of traveling.    Does the rule, properly understood, signify that the traveled way alone, or the space exactly covered by it and no more, is intended for the use of travelers ?    Or, is it true, only as a general proposition, indicating the general duty of the traveler to pursue the traveled way, or that part of the highway which has or *ought* to have been prepared and made safe and suitable for travel, and which proposition grows out of another one, also generally true, that towns are not required to make highways within their entire space, or to their extreme limits, on both sides, fit and suitable for that purpose ?

The conclusion arrived at in the first part of this opinion, and

which was affirmed or found as a question of fact by the jury, that the situation and nearness to the traveled path of the projecting corner of boulders rendered the traveled path unsafe and dangerous, seems very clearly to indicate that the spot where the boulders lay, might at some times, and under some circumstances, be properly passed over by the traveler, and that no want of ordinary care and prudence could be attributed to him for doing or attempting to do so. If no traveler could with propriety pass there, if it was an act of heedlessness and inattention for a person, under any circumstances, to guide his horse or drive the wheel of his wagon, or to walk over that spot, then it would follow that it was no negligence or failure in the performance of duty on the part of the town to leave the boulders lying where they were, and to provide no guards against travelers walking or driving over or upon them. The proposition already laid down, and which we find fully sustained by authority, that it was the duty of the town, under the circumstances, to have removed the boulders, or provided a barrier against them, seems, therefore, inconsistent with the supposition or rule contended for, that no person could in any case properly and with due regard to his own safety, ride, drive, or walk over that particular place, situated as it was with respect to the track actually traveled, and the general course which every traveler must pursue in passing over the road. The two positions are logically inconsistent with each other.

The duty of the town to remove the boulders, implied the safety and propriety, under some circumstances at least, of traveling over the place where they lay, unless a barrier was erected to prevent such travel. If a traveler by night, with a team, and especially a stranger, exercising due care, had driven his wagon against or upon the boulders, and sustained damage, there could have been scarcely a doubt of the liability of the town. And why would the town have been liable? Merely because it was its duty, under the circumstances, to have removed the boulders and made the road safe and passable, or

at least not dangerous, at and over the place where they were, or to have erected a barrier to prevent the traveler from coming in contact with them. If the town had performed its duty towards other travelers, or with respect to other modes of travel, the case of the present plaintiff would never have been presented to this court. It being the duty of towns, therefore, to make their highways safe and convenient, and in so doing to take care that upon roads of the kind here in question, there be no dangerous obstruction or defect so near to the traveled way, as the place where the plaintiff was walking, it would seem to follow that such place was or ought to have been considered a suitable and proper place for a foot passenger to. walk, or for a team or wagon to be driven, the obstruction or defect which was there not being discoverable by or known to the foot passenger or driver at the time he so walked or drove over the place, so that it might not be said that he voluntarily sought or caused his own injury. Proceeding in ignorance of the obstruction, and with no want of care on his part, the traveler might rightfully presume that the town had performed its duty, and that there was no obstruction there, and consequently no danger from his attempted passage.

It is not only lawful but very common in this country to travel the public highways with ox teams, and it is expected that the highways will be made suitable and proper for that mode of travel. The custom, nay, the necessity in such case for the driver to walk outside of the wagon track and by the side of his team, are well known and recognized. If this process of reasoning be correct, and we must say we fail to perceive why it is not so, then the conclusion necessarily follows, that it was not negligence *per se* or in law conclusive evidence of it, for the plaintiff to walk where he did, and that foot passengers may, under such circumstances, and without the imputation of negligence, if the jury shall so say, pursue their way along the margin of the traveled track and outside of but so near to it that in presumption of the town having performed

its duty, the road there may be deemed reasonably safe and free from dangerous defects or obstructions. This conclusion results in no change of the general rule, that travelers are required to keep within the traveled way, but merely in defining its application to be not only to the way actually traveled and in most frequent use, but also to those parts of the road contiguous to and immediately connected with such way, which the town, in the discharge of its duty, is required and presumed to have kept clear from dangerous defects and incumbrances. Such must, as it seems to us, in view of the authorities and of well settled principles regulating the duty of towns, be the true meaning and application of the rule; and if it is, then the question whether the plaintiff was negligent or not in walking where he did, was one of fact for the jury under the particular circumstances, and not one of law for the court. The habit or custom of foot passengers to walk alongside of the wagon track, and the fact, as observed by the court below, that it is usually "the best part of the road for a foot traveler to travel upon" when the wagon track is rough and muddy, are well known. Had the plaintiff been walking at a greater distance, or several feet from the track, knowing that he was so, and come upon obstructions causing injury, a different question might have been presented. The question of negligence on his part might then have become one of law. But under the circumstances of this case, all taken into consideration, we are satisfied the question presented was one of fact and not of law, and that as such it was properly submitted for the determination of the jury.

But a further position taken as showing contributory negligence is, that the plaintiff was at fault for not remembering and thinking about the boulders at the time, and realizing the danger he was in, and guarding against it. It will be borne in mind that he testified he knew the boulders were there, but was not thinking about them. Engaged in conversation, it escaped his mind that danger was so near, and, surrounded by darkness which made it unseen and invisible, he came suddenly

upon it. Shall this absence of thought or momentary forget-fulness be charged as a fault against the plaintiff which shall excuse gross neglect of duty on the part of the town, and pre-clude compensation for injuries received in consequence of such neglect? The case of *Gilman v. Deerfield*, 15 Gray, 577, is urged as an authority very strongly in point upon this objec-tion; and so, in truth, in some respects it seems to be, but in others there are material points of difference. In that case the plaintiff, Dr. Gilman, familiar with the road and its de-fect, was riding over it in the day time and in full view of the defect for several rods before he reached it. The sight of other objects around and knowledge of the locality would naturally serve to stir up the memory and direct one's at-tention to the obstruction itself. Proceeding in darkness with all surrounding objects unseen and undiscoverable, and the precise locality of the traveler unknown, forgetfulness might be more natural and more excusable. The attention of the jury was called to the circumstances, and they were directed to consider that it was in the night, the state of the weather, and the fact that the plaintiff knew of the obstruction, as well as the fact that he might have misjudged its location.

In Dr. Gilman's case, proceeding with one's eyes open in the direction of the obstruction, where it was or might have been plainly seen for some distance before it was reached, coupled with a previous knowledge of its existence, was held to be conclusive evidence of that heedlessness and want of care and attention which would bar a recovery. But that case, even as it was, seems to us to have carried the doctrine of forgetfulness of the existence of a defect or obstruction, as conclusive evidence of negligence, to the extreme verge of rea-son and sound policy. The plaintiff in that case testified, that he was on his way to visit a patient, and that his thoughts were on his professional business, and he did not think of the defect in the road. It seems a very stringent rule to re-quire a professional man, under such circumstances, to banish

all thoughts of his professional business, and to say, that he must, at his peril, bear in mind and continually think of and remember every defect in any highway of which he has previously had knowledge. It is well known that there are many professional men, whose thoughts become so absorbed in their professional business and engagements, that this would be very difficult, if not impossible. Should it conclusively be said to be their fault, indeed, should it be said to be their fault at all, if, under such circumstances, they receive injury through the clear neglect or inexcusable failure of the public authorities to perform their duties?

In *Whittaker v. West Boylston*, 97 Mass., 273, the same court decided that the fact that a person injured by reason of a defect in a highway had previous knowledge of the defect, was not conclusive evidence that he was wanting in due care at the time of the accident. In that case, the defect was a pile of dirt, about six rods long, and from one to three . feet high, covering a portion of the traveled track, which defect had existed for more than two years, and lay within sixty rods of the dwelling house of the plaintiff, who had known of its existence ever since it was created, and had passed it about sunset on the evening of the accident. It would appear that the injury, for which the plaintiff had judgment on verdict in damages, was sustained in the night time, although that fact is not distinctly stated in the report. The same doctrine has been in substance affirmed by the same court, in *Smith v. Lowell*, 6 Allen, 39, and other cases; and also by this court in *Cuthbert v. Appleton*, 24 Wis., 383.

In *Blood vs. Tynsborough*, 103 Mass., 509, the plaintiff was driving down quite a long hill, where there were several water-bars in the road, which she knew she could not trot over in safety, but, thinking she had passed them all, allowed the horse to go upon a trot, when she came upon still another one, by which the wagon was suddenly overturned, and she received injury. " She was looking at the horse " at the time, and did not see the bar which caused the accident. The court said it

was a mistake on her part in supposing she had passed all the bars, and that she was excusable in not seeing that which caused the injury. The case of *Gilman vs. Deerfield* was urged as in point against the right of recovery; but the court denied its application and the plaintiff had judgment.

In the present case we cannot say, as matter of law, that the plaintiff, in passing along the road, was bound at all times by day and by night, to bear in mind and think of the obstruction, although he knew it was there. It is not easy for us to distinguish between forgetfulness as a mistake, knowing that it will frequently unavoidably happen, and mistakes of other kinds. On the other hand, it does seem very easy to say that towns should make their highways reasonably safe and convenient, according to circumstances, so that accidents and injuries to the traveler should not become, as it were, almost inevitable, on account of such mistakes on his part. We think, therefore, that the question whether or not there was any negligence on the part of the plaintiff in this particular, was also a question of fact for the jury, and that as such it was properly submitted to them to decide.

Upon the whole, therefore, we are of opinion that there was no error in the trial or proceedings, and that the verdict and judgment should not be set aside, nor a new trial granted.

*By the Court.* — Judgment affirmed.