## D. W. C. POTTER *v.* TOWN OF CASTLETON.*

*Highway. Damage. Margin. Scales in or near the Margin.*

1. If a traveller goes upon the margin of the highway by his own fault, and there receives an injury, he cannot recover.
2. If he goes upon the margin, made into road, by the town, or by long use, or by an individual, and adopted by the town, and receives an injury there, without his own fault, he can recover.
3. By long use the margin becomes road.
4. The test of liability is not, *how, or by whom*, the road has been made, but whether the town authorities *suffered it to be used for public travel.*
5. The greater the travel, the more care the law imposes upon the town in constructing the highway.

THIS was an action for injury received upon the highway. Trial by jury, September Term, 1879. Verdict and judgment for plaintiff, DUNTON, J., presiding.

The accident occurred on the margin of the highway in the village of Castleton. While in the village, the plaintiff's evidence tended to show, that he visited, among other places, Smith's store, on the west corner of Main and Seminary Streets, and from there drove across the road diagonally to the drug store of J. N. Northrop, left his horse standing ten feet west of the scales, at a

---

*Heard at the January Term, 1880.

hitching post, went into the store, did some trading, came back, got into his wagon ; started to go home, and drove on to the hay scales in front of the drug store, when his right, or as he expressed it, " off " fore wheel dropped into a crevice on the south edge of the scales, throwing him out of his wagon and injuring him seriously. Main Street runs nearly east and west; six rods wide, with a travelled track twenty feet in width, and is the principal street. The scales are placed almost opposite the store front, their north edge resting against the sidewalk, and are within the limits of the highway as laid out. From the outer or south edge of the scales to the north edge of the travelled track of the highway, the distance is twenty-two feet. In this space is the ditch or drain of the highway, which is plainly marked, though grassed over. It slopes gradually from the center of the travelled track of the highway to its lowest point, which is eighteen inches in depth and presents no obstruction to crossing.

The testimony of the plaintiff also tended to show that, since 1818, there had been a drug store at the place where the drug store now is, it being the only one in town, and that people had been accustomed to drive up to it from the travelled track of the highway, and in order to do so, had crossed the ditch at any, and at all, points immediately in front of the store, the land thereabouts being level and smooth, but usually followed a well-defined wheel-track diverging obliquely from the main track at points about two rods easterly and westerly from said drug store, and passing in front of said drug store just outside the sidewalk ; that Dr. Northrop put the scales in their present position in 1871, and that at that time the path to the store was well marked as before described, and the scales were put directly into and across this track leading from the main travelled track as aforesaid, the scales being put in about the middle thereof; and that this driveway had since been used as before, parties using the same passing over the scales with their vehicles. And that the selectmen of the town knew when the scales were put in and never made any objection thereto, nor interfered therewith. The jury visited the scene of the alleged accident. It did not appear that any barricades had been put up by the town to prevent travel over said scales,

nor anything done to indicate that travel was not expected over the same. The testimony of the plaintiff also tended to show that the space between the sidewalk and travelled track of the highway both in front of Mr. Proctor's house and the school lot, and indeed for the entire length of the street above the school lot on that side, is grassed over entirely—or mostly—so that following the course that travel took at that time, and now takes to the drug store and scales, the angle is quite acute, and it would be difficult to turn a wagon around without driving on to the scales, and that the usual course of travel for persons having business at the store was over the scales.

The testimony of the defendant tended also to show that the course of travel to the drug store was from points in the travelled track of the highway immediately in front of the store, but that the scales were raised a foot and a half above the surrounding land, and that the space on the west side of the scales was more ample than claimed by the plaintiff, that it was easy to turn around on that side without crossing the scales, and that such was the course people usually took who drove up to the store on that side of the scales.

Dr. Northrop testified that he had owned the drug store since 1855, and that since that time he had done all the work that had been done on the highway between the travelled track and store, including the sidewalk. This was all the testimony of either party upon that point. During the last two years the town clerk's office and law office of Mr. Howe have been in the same building as the drug store. It did not appear that there was anything to invite travel over the path to the drug store except said store, scales and offices aforesaid, nor that it was used except by people visiting the drug store, scales or offices aforesaid. No question was made but that the travelled track of Main Street was of sufficient width and in proper and sufficient repair and condition to accommodate all the travel that had occasion to use it.

Plaintiff's evidence further tended to show that the scales, when first set, were safe for teams to pass over them, but that the ends of the planks composing the flooring had been afterwards sawed off from time to time as the scales became bound in the winter

seasons, so that at the time of the accident there was an opening into which the wheels of the plaintiff's wagon fell without difficulty, as several other wagon wheels had fallen before; that this injury would have been wholly avoided if the scales had been well built and properly cared for; that the plaintiff had no knowledge of the insufficiency of said scales; that directly after the accident a board attached to the outside frame work by hinges was placed over the crevice protecting the same, as sometimes had been done before, and that since said accident said scales have been rebuilt, the timber and planking having decayed.

The court charged the jury:

Conceding the south track to have been precisely as claimed by the defendant, (that is, the track passing through the village of Castleton,) and sufficient for all travel passing directly through the village, the court for the purpose of this trial tell you that if you find that the scales were constructed in a portion of the highway where there had been a travelled track which had been used for fifteen years as the usual approach to the drug store in Castleton village, and for the last two years also used as the office of the town clerk of the defendant town, and said scales after their construction and up to the time of the accident had been used by the permission or sufferance of their owner and the town as a part of said track or highway by persons approaching and leaving the drug store and office aforesaid with teams, and such scales were in the usual route travelled for such purposes, then said scales were a part of the highway which the defendant town was bound to keep in such condition or repair that they would be reasonably safe as a part of the highway for the amount and kind of travel that might be fairly expected to travel over them.

The jurors were requested by the court to find a special verdict, and returned the following:

*Ques.* 1. Did the accident complained of by the plaintiff happen in that part of the highway that has ever been worked by the town for the purpose of travel with horses and carriages? We have no definite evidence.

*Ques.* 2. Did the accident complained of occur in that part of the highway which from its form, construction and position was apparently the place designed by the town for the purpose of travel of horses and carriages, east or west, through the village of Castleton? Yes.

*Ques.* 3. Did the accident complained of by the plaintiff happen in that part of the highway used at that time by the public for travel with horses and carriages through the village of Castleton? Yes.

*Ques.* 4. Did the plaintiff at the time of the accident voluntarily leave the main travelled path of the highway leading through the village for the purpose of going to the drug store? Yes.

*Ques.* 5. Was the main travelled path of the highway at the point opposite to where the accident occurred of sufficient width and in proper condition, and in good and sufficient repair at the time of the accident to accommodate all travel that had occasion to use it? Yes.

*Ques.* 6. Did the negligence of the plaintiff contribute in any degree to the happening of the accident? No.

*Ques.* 7. Was the plaintiff bereft of his reason in consequence of the injuries? Yes.

*Ques.* 8. How long? About six days.

*Prout & Walker,* for the plaintiff, cited, on the question whether towns are liable for defects in the margins of highways, *Cassidy* v. *Stockbridge,* 21 Vt. 391; *Snow* v. *Adams,* 1 Cush. 443; *Morse* v. *Richmond,* 41 Vt. 439; *Willard* v. *Newbury,* 22 Vt. 458; *Bagley* v. *Ludlow,* 41 Vt. 434.

Acquiescence by a town in the use of a route of travel distinct from the main travelled path of the highway is evidence of its adoption for public use. *Whitney* v. *Essex,* 42 Vt. 520. When two tracks for travel exist towns are bound to keep both in repair. *Ozier* v. *Hinesburgh,* 44 Vt. 220; *Goodrich* v. *Colchester,* Roberts's Dig. 369; *Stark* v. *Lancaster,* 57 N. H. 88.

*P. R. Kendall* and *John Howe,* for the defendant.

Towns are obliged only in this State to supply the public with a highway or travelled track sufficient for *through* travel, and to keep their margins in such state of repair that they may be safe against accidents that may reasonably be expected to occur in the travelled track. They are not obliged to work their margins to suit the private convenience of individuals. That part of the highway not used for through travel is the margin. *Blodgett* v. *Royalton,* WILLIAMS, J., 14 Vt. 295; *Page* v. *Weathersfield,* 13 Vt. 429; *Hyde* v. *Jamaica,* 27 Vt. 454; *Whitney* v. *Essex,* 38

Vt. 270; *Rice* v. *Montpelier*, 19 Vt. 470; *Cassidy* v. *Stockbridge*, 21 Vt. 391; *Morse & Wife* v. *Richmond*, 41 Vt. 439; *Ozier* v. *Hinesburgh*, 44 Vt. 220; *Smith* v. *Wendell*, 7 Cush. 498; *Shepherdson* v. *Coleraine*, 13 Met. 55; *Kellogg* v. *Northampton*, 4 Gray, 65; *Keith* v. *Easton*, 2 Allen, 552; *Kingsbury* v. *Dedham*, 13 Allen, 186.

The opinion of the court was delivered by

POWERS, J. It is now well-settled law in this State that no action can be maintained against a town for injuries received outside the travelled track of a highway if the traveller goes upon the margin by his own fault. *Rice* v *Montpelier*, 19 Vt. 470, is a leading and representative case upon the subject.

It is also well settled that if the margin has been worked into road or been made road, designed for travel, by long user, the traveller who receives injury thereon without his own fault may recover his damages. *Whitney* v. *Essex*, 42 Vt. 520, and *Ozier* v. *Hinesburgh*, 44 Vt. 220, are representative cases in support of this rule. We are not disposed to enlarge or restrict the doctrine as expressed in these cases. The question presented here is, to which class do the facts stated assign this case. The special finding of the jury has solved the doubt in the answers to special questions, two and three, in which it is found that the accident happened in that part of the highway used by the public for travel.

The track to the drug store had ceased to be *margin*, and had become *road* by user since 1818, and should be kept in repair as faithfully as the main track through the village. The plaintiff in using it as a way to the drug store was not, like plaintiff in *Rice* v. *Montpelier*, out of his place, but was using a way designed for use.

The fact that the town had never worked this path is not decisive upon the question whether it was a highway. If the town had worked it, its character could not be in dispute. But a highway may be as effectively established by other means. If private individuals make a wrought way and the public are permitted to use it for public travel for a long time—or if the public travel

Potter *v.* Castleton.

itself works a way without other agency, and the way is suffered by the town authorities to be used, as this way was used, for many years, the way becomes one which the town is bound to keep in repair. If Dr. Northrop had kept that portion of the main track through the village opposite his place of business in repair for years as he did this side track, it would not lessen the liability of the town if the public were suffered to use it. The scales were constructed by Dr. Northrop for his own private purposes—the platform extended across the side track leading to the drug store, and thus became a section of the road over which the travel going that way had to pass. Under such circumstances the liability of the town is the same as it would be had Dr. Northrop placed the scales by the side of the main track through the village, and extended the platform over such track, and the public were permitted as in this case to drive over the platform.

It was argued that the town had provided a way for all *through* travel, and that this was the measure of its duty. We understand that the duty cast upon towns is to provide a way sufficient for the travel that has occasion to use it, whether it be *through* travel, or travel that diverges from the *through* line. There is special occasion in large villages for more ways and better constructed ones, leading to public places, than in more sparsely settled localities, and if the authorities construct them or adopt them when otherwise constructed, they owe the travelling public the duty of keeping them in repair.

Judgment affirmed.