HOUFE vs. TOWN OF FULTON.

*Bridge, liability of town for injuries resulting from defects—Negligence, contributory—Nonsuit.*

1. The absence of any guards or railing at the side of a bridge forming part of a highway, is a fact from which the jury may find that the bridge was defective, within the meaning of the statute, rendering towns liable for injuries resulting from defective highways.

2. Where, besides the defect in the highway, there is another proximate cause contributing directly to produce the injury, which cause is not attributable to the plaintiff's negligence, nor that of any third person, the town is still liable in case the jury shall find that the damage would not have been sustained but for the defect in the way. So *held*, in a case where plaintiff's horse, passing over a bridge without guards, suddenly stopped, staggered, fell sidewise, and went over the side of the bridge into the river, carrying him with it, there being no want of care or prudence on plaintiff's part.

3. Whether the same rule would apply where the horse, at time of the injury, was in a condition of flight or unmanagebleness, not itself caused by any defect in the highway, is not decided. But, if there is an exception of that kind, it does not include cases where a horse merely shies or starts, or is *momentarily* not controlled by the driver.
4. A traveler on a highway is only bound to exercise ordinary care and circumspection, according to the circumstances of the case, to avoid injury from defects in such highway, and he need not show such care as men of great caution would have exercised, in order to entitle himself to recover for injuries received in consequence of such defects.
5. The question of contributory negligence is one eminently proper for a jury to determine, and where the evidence does not clearly and indisputably show such negligence or want of care on the part of a plaintiff suing a town for injuries received by him in consequence of defects in a bridge, as to leave nothing to submit to the jury upon the opposite theory or position, a nonsuit should not be granted.

APPEAL from the Circuit Court for *Rock* County.

Action to recover damages for injuries sustained by the appellant by reason of defects in a bridge over Rock river in the town of Fulton. The complaint alleges the existence of a certain public highway in that town and of a bridge constituting part of it, and the liability of the town to keep it in good repair; that such bridge was and had for a long time been insufficient and unsafe by reason of cracks and apertures between the planks, and the want of a railing, and was known to be so by the town supervisors and overseers of highways; and that he received severe injuries from being precipitated over the side of such bridge in consequence of such defects, without fault or negligence on his part, for which he claims damages.

The answer denies the existence of a public highway across such bridge, or the liability of the town to keep it in repair, or that it was unsafe or insufficient; and alleges that the plaintiff well knew of the condition of the bridge before the accident, and that his injuries occurred through his own negligence and want of proper care and prudence.

The plaintiff proved facts tending to show that the bridge

in question was on an established highway, and had been maintained, in part, at least, by the town of Fulton. He also proved the condition of the bridge, the injury received by him, and the circumstances attending it, which sufficiently appear in the opinion of the court.

The plaintiff having rested his case, the defendant moved for a nonsuit, on the ground that the proof showed the horse to have become actually uncontrollable at the time of the accident, and, therefore, the town was not liable; which motion was granted, and the plaintiff appealed.

*Williams & Sale*, for appellants, argued that, though the primary cause be pure accident, yet, if there be no negligence on the part of the plaintiff, the town is liable when the injury is the combined result of such accident and a defect in the highway, citing *Palmer v. Andover*, 2 Cush., 600; that a horse is not to be considered uncontrollable that merely shies or starts, or is momentarily not controlled by his driver, citing *Titus v. Northbridge*, 97 Mass., 258; and that there was evidence to go to the jury tending to show that the horse was a proper horse, driven with ordinary care and prudence, and that it was proper and prudent to attempt to drive it across the bridge, and that the accident would not have happened but for the want of a railing.

*I. C. Sloan*, for respondent, contended that the burden of proof was on the plaintiff to show affirmatively that he was exercising ordinary care at the time of the accident, citing *Dressler v. Davis*, 7 Wis., 527; that the testimony showed negligence on the part of the plaintiff, and that he knew the condition of the bridge when he attempted to cross; and, consequently, he took upon himself the risk involved, citing *Achtenhagen v. Watertown*, 18 Wis., 331; *Folsom v. Underhill*, 36 Vt., 580; *Nicks v. Town of Marshall*, 24 Wis., 139; and that he was bound to prove that the defect in the highway was the sole cause of the accident, citing *Adams v. Carlisle*, 21 Pick., 146; *May v. Princeton*, 11 Met., 442; *Davis v. Dudley*, 4 Allen, 558;

*Marble v. Worcester*, 4 Gray, 401; *Murdock v. Warwick*, id., 178; *Titus v. Northbridge*, 97 Mass., 258; *Fogg v. Nahant*, 98 id., 578.

Dixon, C. J. We have carefully examined the numerous adjudications touching the questions here presented, and are of opinion, upon the facts which the evidence tended to prove, that the nonsuit must be set aside and the case submitted to a jury. It is not claimed that the absence of any railing or barrier at the side of the bridge where the injury happened, to prevent the teams and vehicles of travelers and even foot passengers from passing or being precipitated over the edge and into the river below, was not a fact from which the jury might find an insufficiency or want of repair, within the meaning of the statute, which would render the town liable in damages for any injuries resulting from that cause. The reported cases in which this has been so found, and the towns held responsible on account of injuries received from such defects, are too frequently to be met with in the books to admit of doubt or controversy upon the point.

The insufficiency of the bridge being thus clearly established, and it likewise appearing that the same contributed to or might have caused the injury of which the plaintiff complains, or at least that such injury might not have been sustained if a suitable railing or barrier had been previously erected on that side of the bridge over which he was drawn and thrown down upon ice, the stream being frozen over; the only questions here are, whether there was any want of ordinary care on the part of the plaintiff or on the part of the person with whom he was riding and who was driving the horse at the time of the injury, which also contributed to the injury, or may be said in any manner to have produced it, or enhanced the danger to which the plaintiff was exposed by reason of the defect; and whether the defect in the bridge was the sole cause of the injury; or, if it was not,

whether it was combined with any other cause which will pre-·clude a recovery against the town.   The two first are the only propositions urged in support of the nonsuit.   It is said that the plaintiff and the person with whom he was riding were not in the exercise of ordinary care and skill in driving, when they attempted to cross over the bridge in the manner they did.   It is also insisted upon as a rule of law, correct in itself and applicable to this case, that the defect in the bridge must have been the *sole* cause of the injury, or the town is not liable.

The evidence was, that the bridge, a wooden structure about fourteen feet wide and ten rods in length over Rock river, with considerable ascent towards the center from either direction, was bare of snow or ice, and that the plaintiff and the man with him, who were traveling in a cutter with a single horse, were passing over it, having reached about the center, the horse drawing the cutter with them in it, when the horse suddenly stopped, and, sitting back in the harness, staggered and fell side-wise, and went almost instantly headlong over the side of the bridge taking the plaintiff with her in the descent to the ice below. The evidence in other respects shows no want of ordinary care or prudence on the part of the plaintiff or of the person with whom he was riding.   Unless the plaintiff and the person with him were in fault in requiring the horse to draw them over the bare bridge, or in not getting out of the cutter and walking over so as to relieve the animal in that way, it is not contended that there was any negligence on their part.   No neglect of duty in any other particular on the part of the plaintiff, the driver, or any third person, except the town, was shown.

The evidence was, that the horse was safe and kind and suitable for the road, with no tricks, vices or disease previously known; that the harness was a proper and sufficient one, and properly put on; and that there was no imperfection about the sleigh which should tend to produce the accident.   The horse was being carefully driven near the middle of the bridge,

having exhibited no signs of want of strength or of being overtasked, until she unexpectedly stopped, and, in spite of all efforts of the driver to the contrary, swerved around, and falling, went over the side of the bridge in the manner described, giving the plaintiff, no time or opportunity to escape from the cutter although he tried to do so ; and there seems to have been nothing which common prudence and foresight could have suggested to prevent the accident, except, only, that the plaintiff and the driver should have got out of the cutter and walked over the bridge. The theory of the defendant is, that the horse choked down by overdrawing, and, therefore, it was careless and unskillful driving on the part of the plaintiff and the driver. Whether the horse was choked does not clearly appear, and the opposite theory is that she became dizzy or had a fit.

It is, at best, but mere speculation, what caused such strange action of the horse; but, supposing it to have been over-drawing, it is not within the experience of the members of this court, and certainly not a point to be ascertained and settled by examination of the books, that it was carelessness in the plaintiff and in the person driving, to attempt to ride across the bridge in the manner they did. It is our experience, to say the least, that travelers very frequently do the same thing under like circumstances, and that probably a majority, and perhaps a large majority of persons, would have done just as the plaintiff and his fellow-traveler did. Very careful and prudent men might have acted differently, and there are doubtless many such who would have pursued the course which now, after the damage has been sustained, it may not be difficult to see might have been an almost certain means of avoiding it. But the question in such cases is, not what men of great care and caution would have done to guard against the injury, but what common prudence and sagacity required should have been foreseen and provided against it.

It is only the exercise of ordinary care and circumspection

under the circumstances, which is required to shield the plaintiff from the charge that the damages were sustained through his own wrong, or only the want of such care which will operate to defeat the action.    This is the rule of all judicial decisions upon the subject, of which, in this court, see *Dreher v. Fitchburg*, 22 Wis., 675, and *Ward v. Milwaukee and St. Paul Railway Co.*, *ante*, p. 144.  It is impossible for this court to say, therefore, that there was such negligence or want of ordinary care on the part of the plaintiff, or such clear and indisputable evidence showing it, that there was nothing to submit to the jury upon the opposite theory or position.    On the other hand, it clearly seems to us that the evidence was quite sufficient to carry the case to the jury, and that the question was one eminently proper for the jury to consider and decide, in view of all the facts and circumstances.

The next question is, whether the defect in the way must have been the *sole* cause of the injury, in order to charge the town with liability for it; or whether, if there be two efficient, independent proximate causes of an injury sustained by a traveler upon a highway, the primary causes being one for which the town is not responsible, and as to which the traveler himself is in no fault, and the other being a defect in such highway, the town may still be held liable therefor.    In this case the falling of the horse, whether she was choked, had a fit, or was attacked by any other disease, cannot but be said to have been a co-existing and co-operating cause of the injury. It was one of the primary and efficient causes of it, which existed independently of any negligence or default on the part of the town, and for which the town was in no manner responsible, and was a cause in active operation and helping to produce the injury at the very moment it was sustained.    The question thus presented is by no means an easy one; and, as naturally might be expected, there is clear conflict of authority upon it.    It has undergone most thorough examination in the courts of several states where the statutes are in all material

respects like our own, and with directly opposite results. In Maine it has been held, in a series of decisions, that the town is not liable under such circumstances. *Moore v. Abbot*, 32 Maine, 46; *Farrar v. Green*, id., 574; *Coombs v. Topsham*, 38 Maine, 204; *Anderson v. Bath*, 42 Maine, 346; *Moulton v. Sanford*, 51 Maine, 127.

In the last named case, the facts of which were much like those in the case at bar, the horse there having become frightened at some animal jumping into the water, and run the body of the wagon off of the edge of the bridge, without a railing, and into the stream below, the court were divided in opinion, five of the justices agreeing that there was no liability on the part of the town, whilst the chief justice and two of the associates maintained the opposite doctrine. The case is particularly valuable as being a most able and lucid discussion of both sides of the question, and from which it will at once be discovered that it is not without the support of powerful argument either way. The chief justice and those who agreed with him maintained that the former decisions in the same court only established that there could be no recovery where the injury happened by the joint effect of a defect in the wagon, horse, harness, or other equipments of the traveler, and of a defect in the highway; and that the case then under consideration was distinguishable. They said that the rule of the previous decisions was, that the traveler was responsible for defects in his team, wagon, harness and other equipments, which contributed to the injury, and that, though he was ignorant of the existence of such defects and without fault for his ignorance; in other words, that he warranted the goodness of his team, wagon, etc., and could not recover if the injury occurred in any degree through the defects in them. But they said that the existence of extraneous facts, for which neither party was responsible nor at fault, and their effect upon the liability of the town were not involved in the discussions, and had not been decided. It is not our purpose to repeat the arguments upon the main question, but merely to refer to them.

In New Hampshire and Vermont a broader construction has been given to the statute in favor of the traveler, and a more extensive liability on the part of towns and cities been held to be created by it; and it has been decided, where two causes combined to produce the injury, both of which were in their nature proximate, the one being the defect in the highway, and the other some occurrence for which neither party is responsible, even though the latter arose from some vice in the horse or defect in the carriage or other traveling equipments, but which was unknown to the plaintiff, he being in no fault for such want of knowledge, and the accident was one which common prudence and sagacity could not have guarded against, that the town is liable, provided the jury are satisfied that the damage would not have been sustained but for such defect in the highway. The principle of those decisions seems to be, that, as it is in the ordinary course of events, and consistent with a reasonable degree of prudence on the part of travelers, that accidents of the kind will occur, so it is the duty of towns, in the construction and repair of roads, to provide for the reasonable safety of travelers with reference to such accidents, so that, if possible, when they do happen, as must be expected, no damages will ensue in consequence of the unsafe or dangerous condition of the road. The following are some of the cases, in those states, in which this rule has been maintained. *Winship v. Enfield*, 2 N. H., 197, 213, 216; *Clark v. Barrington*, 41 N. H., 44; *Tucker v. Henniker*, id., 317; *Norris v. Litchfield*, 35 N. H., 276; *Hunt v. Pownal*, 9 Vt., 411; *Kelsey v. Glover*, 15 Vt., 708; *Allen v. Hancock*, 16 Vt., 230. The principle of these decisions has been adopted by this court, *Dreher v. The Town of Fitchburg*, 22 Wis., 675.

In Massachusetts there seems to be some conflict of decision upon the point. In *Palmer v. Andover*, 2 Cush., 601, it was ruled, as in the cases last above cited, that a town is liable for an injury occasioned by a defect in the highway, where the primary cause of the injury is a pure accident, as, for example,

the failure of some part of a carriage or harness; provided the accident occurred without the fault or negligence of the party injured, and be one which common prudence and sagacity could not have foreseen and provided against; and, provided, also, that the injury would not have been sustained but for the defect in the highway. The decision in that case has never, to our knowledge, been formally overruled by the court in which it was made, although it seems to have been considerably shaken by the language employed in some subsequent cases; whilst in others still later we find it referred to with apparent approbation and acquiescence. We regard it as still correctly expressing the rule of law in that state in cases of the kind, though it has frequently been necessary to distinguish it. The language of Chief Justice Stow in *Murdock v. Warwick*, 4 Gray, 180, and again in *Marble v. Worcester*, id., 397, 401, 402, sounds very like overruling it; but afterwards, in *Rowell v. Lowell*, 7 Gray, 102, the decision was directly approved; and so too, we understand the reference in *Titus v. Northbridge*, 97 Mass., 264, 265.

The limitation put upon it in the last two cases and which was indeed plainly implied from the case itself, was, that the contributing cause must be "a pure accident," by which is meant some unexpected occurrence or event for which no person is responsible, or which cannot be attributed to any unlawful or negligent acts of omission or commission, either on the part of plaintiff or of any third party. Thus explained and applied, we understood *Palmer v. Andover* to be the law of Massachusetts at the present day; and, save only in cases where horses become unmanageable, though without any fault or negligence on the part of the plaintiff or the driver, unless such condition is caused by a defect in the highway, as when they become so by reason of fright not produced by something unlawfully or improperly left in the highway, or by reason of disease or viciousness, so that the driver cannot stop them, or direct their course, or exercise or regain control over their movements, and·

in that condition they come upon a defect in the highway, and an injury ensues; we understand also that the general principles laid down in the same case are still the governing ones in actions of the kind in that state. Those principles, it is said in the opinion, "require nothing further of the plaintiff than to prove ordinary care and diligence on his part in all that appertains to himself and his manner of traveling, at the time of receiving the injury; that the road was defective and out of repair, so much so and for such a length of time as to show the town in legal fault as to such defect; and the further fact that the injury would not have been sustained, if the town had not so permitted their road to be out of repair."

The only exception to the principles thus laid down, as yet to be found in the reported cases, is that above noted, where horses became unmanageable in the manner and for the causes stated; and in such cases it has been frequently decided that there can be no recovery against the town, although the plaintiff or the driver was in no fault. *Marble v. Worcester, supra*; *Davis v. Dudley*, 4 Allen, 557; *Titus v. Northbridge*, 97 Mass., 258; *Horton v. Taunton*, id., 266, note; *Fogg v. Nahant*, 9 Mass., 578. Some of these cases seem to go upon the principle that, the horses being actually uncontrollable, the plaintiff is unable to show the exercise of ordinary care or of any care at the time of the injury in order to avoid it. Others say that the flight or unmanageableness of the horses is the misfortune of the traveler, of which he must bear the loss. A better reason would seem to be, that it is not within the spirit or intent of the statute that the towns shall be bound to provide roads that shall be safe for frightened and runaway horses; that the remedy is presumed to have been given only to those who have their horses and carriages under their control at the time. But, whatever the true ground of such decisions may be, or whether they are sound or not, it is unnecessary to inquire here, since a recognized exception to them is, that a horse is not to be considered uncontrollable that merely shies, or starts, or is momen-

tarily not controlled by his driver. *Titus v. Northbridge.* Such was the fact in the present case. The horse, if beyond the control of the driver, was so but for a moment. Instantly, upon stopping, the fall or plunge was made, and the plaintiff carried over and down upon the ice, the driver barely having had time to save himself by catching upon the edge of the bridge. The case does not fall within the rule of any of those last above cited, but is clearly within the exception.

Upon the whole case, therefore, and an examination of all the authorities, we are inclined to the opinion that the nonsuit should be set aside and a new trial granted. The decided weight of authority is, that if, besides the defect in the way, there is another proximate cause of the injury, contributing directly to the result, but which cause is not attributable to the fault or negligence of the plaintiff nor of any third person, and is unconnected with the fright or unmanageableness of the team, caused as above stated, the town is liable, provided the jury shall determine that the damage would not have been sustained but for the defect in the way. Some of the reasons against the conclusion thus adopted, we admit, are very strong; but, on the other hand, those which favor it seem equally forcible; and in such a case we know of no better rule than to be governed by the weight of authority.

*By the Court* — Judgment reversed, and a new trial awarded. LYON, J., took no part.