Prideaux and wife vs. The City of Mineral Point.

*By the Court.*— The judgment is reversed, and the cause remanded to the court below for a new trial.

---

## PRIDEAUX and wife vs. THE CITY OF MINERAL POINT.

| | |
|---|---|
| 43 | 513 |
| 75 | 66 |
| 75 | 645 |
| 43 | 513 |
| 84 | 22 |
| 43 | 513 |
| 87 | 233 |
| 43 | 513 |
| 88 | 321 |
| 43 | 513 |
| 99 | 197 |
| 43 | 513 |
| 104 | 456 |
| 43 | 513 |
| 105 | 151 |
| 43 | 513 |
| 106 | 91 |
| 43 | 513 |
| 115 | ³545 |

HIGHWAYS: LIABILITY OF CITY: EVIDENCE. *(1–4) Certain facts held not to excuse dangerous condition of a street. (5) Certain declarations not part of the res gestæ.*

CONTRIBUTORY NEGLIGENCE: AGENCY. *(6) Negligence of driver of vehicle. (7–9) Degree and proof of contributory negligence.*

1. In an action for injuries from a defective highway, proof in behalf of the defendant city that its authorities, upon actual view, were satisfied with the condition of the highway, is inadmissible.

2. Sec. 5, ch. 237 of 1873 (the charter of the defendant city) does not, if it could, make the judgment of the common council conclusive of the sufficiency of the street.

3. There being a depression in one of the traveled streets of a city, the authorities raised one-half in width of the street over the depression, by embankment some six feet high in the middle and gradually lessening towards each end; and the side of the embankment, next to that half of the street which was left in its natural state, was precipitous and without railing or barrier. *Held,* that the street was unsafe, as a matter of law, even though *each half* was safe by itself.

4. Proof in such a case that the defendant municipality has expended all the means at its disposal in repairing its streets, will not excuse it, every municipality being bound, at its peril, to keep its highways in sufficient repair, or to take precautionary means to protect the public against danger of insufficient highways.

5. The injuries complained of having resulted from the overturning of a livery carriage, in which plaintiffs were riding, the declarations of the driver to the owner of the carriage and team, after his return to the stable without the injured person, were not admissible in chief as part of the *res gestæ,* though admissible, upon proper foundation, to contradict the driver.

6. The driver of a *private* conveyance is the agent of the person in such conveyance, so that his negligence, contributing to the injury complained of by such person as caused by a defective highway, will defeat the action. *Houfe v. Fulton,* 29 Wis., 296, as to this point, approved.

VOL. XLIII.— 33

7. Instructions in this case which the jury might naturally, and probably did, understand as meaning that the driver's want of ordinary care, to defeat the action, must have been *gross*, held erroneous.

8. The doctrine of *Hoyt v. Hudson*, 41 Wis., 105, as to proof of contributory negligence, explained.

9. It was error to instruct the jury that contributory negligence, to defeat the action, must be proven *conclusively* to their minds.

APPEAL from the Circuit Court for *Iowa* County.

Action by husband and wife for injuries to the wife alleged to have been caused by a defective street in the defendant city. The answer denies that the street was unsafe, and alleges contributory negligence.

On the 22d of August, 1875, Messrs. Ternes and May, residents of the defendant city, hired a two-seated carriage from a livery stable therein for the purpose of making a visit to the house of one Hubbard, six or seven miles out of the city. Ternes lived a quarter of a mile from the place of the accident; and May resided, and had resided for ten months, in the vicinity of High street, on which it occurred. Ternes got the carriage from the stable in the morning, and drove it to May's house, without passing over the place of the accident, or within a hundred feet of it. At May's he took in Mr. and Mrs. May and *Mrs. Prideaux;* and May then drove the party to Hubbard's, and in so doing, apparently, drove along High street past the place where the accident afterwards occurred. They left Hubbard's on their return homeward, about six o'clock P. M., Ternes sitting on the right hand side of the carriage, on the front seat, and driving all the way, while May occupied the left end of the same seat, and Mrs. May and *Mrs. Prideaux* were on the back seat. The top over the back seat was up, but the front seat was uncovered. They reached the city about eight o'clock P. M., and, on reaching High street, which runs east and west, turned to the left, and drove westward along said street forty or fifty feet, when the left wheels of the carriage went over the edge of an embank-

ment on the southern side of the street, the carriage was upset, and *Mrs. Prideaux* received the injuries complained of.

That part of High street at which the accident happened, was about a quarter of a mile from the business part of the city, and was known as the Linden road. The site of Mineral Point is described by the plaintiffs' witnesses as " very hilly;" and the natural surface of the ground at this place sloped from the northern to the southern side of the street about a foot and a half, and was depressed for a considerable distance. At the time of the accident, the southern portion of the road, to a width variously estimated by the witnesses at from ten to fifteen feet, was left in its natural condition, and seems to have been used considerably by teams. The remainder of the width of the road had been filled by the city with broken stone and gravel; the height of the macadamized portion, or " embankment," above the natural road adjoining it on the south, being six feet near the middle (where there was a culvert), and diminishing towards each end. The total width of this raised part of the street, measuring from the sidewalk on the north side, seems to have been about thirty feet, of which from twenty-five to twenty-seven feet was in good condition for travel at the time of the accident. The northern side of the road had been macadamized and raised above the southern for several years; but during the spring and summer of 1875, the city authorities had raised the embankment about two feet through a great part of its length, and increased its width about six feet; and this work was completed about two months before the time of the accident. Just at the place where the carriage was upset, the evidence for plaintiffs tends to show that the general level of the embankment above the unimproved part of the road adjoining was between three and four feet, and its side sloped at an angle of about forty-five degrees. There was no railing or barrier, and no light or other signal to indicate danger.

Ternes testified for the plaintiff, that at the time of the ac-

cident he was driving toward the residence of Mr. May; that, in order to reach this, he would have been required to drive thirty or forty rods farther west on High street, and then turn off at the *north* side; that he was endeavoring to drive along the middle of the street; that he had driven over High street before, but did not know that they had been improving it that summer, and had never seen the embankment; that he was driving on a gentle trot, using the same care and caution as at ordinary points; that his attention was directed to the road at the time, and he was trying to get the best track. May testified that he knew the condition of the street at the time —" knew it when I went over it in the morning;" and that when they reached the vicinity in the evening, he did not notice until it was too late, that Ternes was going to the edge of the embankment. He also said, on cross examination: " I cannot tell what I was doing when we turned that corner; I may have been looking ahead. Perhaps you could have seen one hundred feet ahead of you, but you could not distinguish; it was not very dark, but it was dark; I think it was starlight, but am not certain. It may have been that if I had been driving myself, I could have seen this embankment; I think I could." He also testified that he thought Ternes was driving well; that the horses had been in his control all the time, and were trotting. Another witness for the plaintiff was permitted to testify, against objection, that after the improvements put upon High street in 1875 were completed, he notified the city council that the road was dangerous, and asked them to examine it; and that they did examine it shortly afterwards, nearly two months before the accident. *Mrs. Prideaux* testified that she had never seen the road in question before the accident.

The evidence for the defense tended to show that the evening of the accident was a bright, clear, starlight evening, in which, at the hour of the accident, it was easy to distinguish objects at a considerable distance; that the raised portion of

High street, at the place of the accident, was in an excellent condition for travel for a width of from twenty-four to twenty-seven feet, which was quite sufficient for the amount of travel upon it; and that the carriage was being driven with excessive rapidity, at the time of the accident. It also tended to show, that, before the spring of 1875, the road or street at this place was in a very rough condition, " dangerous and bad to travel over," for about 250 yards; that there had been an " embankment or macadamized road " there for several years, taking up about half the width of the street, and south of it a clay road, the former being used in wet and the latter in dry weather.

A witness for the defendant, who was one of its street commissioners in 1875, was asked whether, after the road was constructed as it was at the time of the accident, the city council approved of it, and whether he knew how much the council had expended on streets that year; but the questions were ruled out. Defendant offered to show that, at the time of the accident, the amount which the city was authorized by its charter to raise for street purposes in that year, had been raised and expended in a careful manner, and that there was no money at that time in the city treasury for repairing streets; but the offer was rejected. The owner of the livery stable, from whom the carriage was hired, was asked whether he had any conversation with Ternes or May, at his barn, " shortly after the tip over," in reference to the accident; but the evidence was rejected.

The general charge of the court contained the following, among other propositions: " Cities or township corporations are compelled, under the law, to keep their highways in a reasonably safe condition; but what is a reasonably safe condition in one case, might not be such in another. * * * If the authorities of a town, attempting to improve the condition of a highway, whether rightfully or not, put artificial improvements on it in such a manner that it would be dan-

gerous to ordinary travelers, the town would be liable. * * * If it makes improvements in highways, they must be safe for people to travel over under ordinary circumstances. In this case of the city of Mineral Point, it is incumbent upon them, where they undertake to improve the highway, to do it in such a manner that, when it is left, it is not dangerous to the public travel. Some stress has been laid upon the point that there was a space of twenty-five or twenty-seven feet that was in good traveling condition. That does not cut any figure in this case. * * * An accident happening in the daytime might be regarded as negligence on the part of the person injured, that would not be so regarded if it happened to him at night, notwithstanding the law requires a greater amount of vigilance at night than in the day. * * * The two questions that you are to settle are: first, what was the condition of that road; if you find that the road was not in a safe condition, then, next, what amount of damage plaintiff is entitled to recover; provided that the plaintiff has not contributed by any negligence to bring this about. Because the law holds persons responsible for negligence, *and if he was so grossly negligent or careless as to contribute to the act or injury,* he cannot recover. * * * Our supreme court has decided that in all actions where defendant seeks to avoid a recovery by alleging or showing negligence on plaintiff's part, *it is incumbent on the defendant to prove* to your satisfaction that there was such contributory negligence. The plaintiff need not prove that there was no negligence; for it is not required of a party to prove the negative. That is a matter of defense on the part of the town. So, if you find that the road was not in a reasonably safe condition, then the further question for you will be, Was there any contributory negligence on the part of this plaintiff? There is no claim here that there was any negligence on the part of this woman. The law puts the driver in the place of her, in this suit, because he was controlling the team. * * * So, you are to find affirmatively that

there was negligence. You are not to presume it — *either that he was drunk, or something that, in the ordinary sense of the term, is acknowledged as carelessness.* If he drove along there *as a man ordinarily drives, not thinking of any danger*, and not knowing that the danger existed, and ran off this place before he found that it was a dangerous place, then there was no negligence on his part. The driver was only bound to exert ordinary prudence, as an ordinary man would do driving along that road. * * * May was not driving the team, and, so far as contributory negligence is concerned, it must be based upon the acts and doings of the driver. So, if you find conclusively to your minds contributory negligence on the part of Ternes, the driver, then the plaintiff cannot recover." The defendant filed a general exception to the entire charge, " and to each and every part thereof," and also a large number of specific exceptions to various parts of it, including those above quoted.

Verdict for the plaintiff; new trial denied, and judgment entered on the verdict; from which the defendant appealed.

For the appellant, a brief was filed by *Lanyon & Spensley* and *J. T. Mills*, and the cause was argued orally by *Mr. Mills* and *Mr. Spensley.* They contended, 1. That the court erred in charging that the fact that twenty-five to twenty-seven feet in width of the street was in a good traveling condition " does not cut any figure in this case." It should have been left to the jury to determine whether the pitch in the street was compelled by the slope in the hill and the depression; whether the road was skillfully and properly constructed, in view of the natural surface and surroundings; and whether it was reasonably safe for public travel *considering all the circumstances. Kelley v. Fond du Lac*, 31 Wis., 179; *Wheeler v. Westport*, 30 id., 392; *Damon v. Inhabitants*, 20 Am. R., 315. 2. That the court erred in everywhere requiring the jury simply to consider whether the *highway* or *road* was unsafe, and not whether it was unsafe *at the point where the ac-*

*cident happened.* It might have been unsafe where the embankment was six feet high, yet reasonably safe at the place of the accident. *Wheeler v. Westport, supra,* p. 399. 3. That the instructions were confused and misleading on the question whether it was necessary to find that *Mrs. Prideaux* herself was guilty of negligence, or whether it was sufficient to prove negligence of the driver. 4. That the instructions were also erroneous and misleading in respect to the degree of care required of the driver, and the degree of negligence which would defeat the action. The jury were told that, "if he drove along there *as a man ordinarily drives, not thinking of any danger,*" there was no negligence on his part. But some men ordinarily drive in a reckless manner; and if the place was dangerous, as the court here assumes, and the night dark, and the driver unacquainted with the road, he had no right to be driving there "not thinking of any danger," but was bound to exercise caution. Again, the court spoke of the negligence that would defeat the action, as though it must have been drunkenness "or something that in the ordinary sense of the term is acknowledged as negligence;" that is, it must be of such a character that there can be no dispute about it — something that everyone would acknowledge to be negligence. This is about the definition of *gross* negligence. *Stucke v. Railroad Co.,* 9 Wis., 202. And so the court told the jury, that "if he was *so grossly negligent* or careless as to contribute to the act or injury, he cannot recover." The rule is, that any want of ordinary care or prudence on his part, contributing to the accident, would prevent a recovery. *Jones v. Parish,* 1 Pin., 494; *Dreher v. Fitchburg,* 22 Wis., 677; *Montgomery v. Scott,* 34 id., 338; *Cremer v. Portland,* 36 id., 99. 5. That outside the business limits of a city or village, where a road has the character of a country highway (as was the case here), it is sufficient if there is a traveled track, convenient, safe and unobstructed, broad enough to accommodate the public travel; and a village, city or town is not required

Prideaux and wife vs. The City of Mineral Point.

to fence in such a track with railing or guard, although there may be gullies or pitches on either side of the road, which would upset a carriage that should run into them. *Kelley v. Fond du Lac*, and *Wheeler v. Westport, supra; Hawes v. Fox Lake*, 33 Wis., 440; *Sykes v. Pawlet*, 43 Vt., 446; *Rice v. Montpelier*, 19 id., 470; *Hall v. Unity*, 57 Me., 529; *Kellogg v. Northampton*, 4 Gray, 65. 6. That as May was not a mere passenger, but had as much right as Ternes to control the carriage, and was sitting where he could control it, the court erred in charging that he was not also acting as a driver of the carriage. 7. That the court erred in excluding evidence of the declarations of Ternes shortly after the accident; in permitting plaintiff to show notice to the council that the road was in a dangerous condition, without allowing the defendant to show that, on examination, the council found it safe; and in ruling out proof that the council of the defendant city had already expended, in a judicious manner, all the money which the law allowed it to expend upon streets during that year.

For the respondents, a brief was filed by *Strong & McArthur*, and the cause was argued orally by *Mr. Strong.* They contended, among other things, that the amount expended by the city on its streets was not material *(Burns v. Elba*, 32 Wis., 606); that the declarations of May or Ternes, after the accident, to the owner of the livery stable, could have been admitted only for the purpose of impeachment, for which no foundation had been laid (1 Greenl. Ev., 462); that the general exception to the entire charge was unavailing, if any instruction was correct; that the thirty-two so called "specific exceptions," embracing the whole body of the instructions, should be treated as a general exception *(Hall v. Fond du Lac*, 42 Wis., 274; *University of Notre Dame v. Shanks*, 40 id., 356); and that the instructions, if taken all together, as they must have been understood by the jury, were free from error injurious to the defendant. They also contended that contributory negligence of the driver cannot be imputed to

Prideaux and wife vs. The City of Mineral Point.

*Mrs. Prideaux*, if he was not under her control.  Shearm. & Redf. on Neg., § 46; *Metcalf v. Baker*, 11 Abb. Pr. (N. S.), 431; *Knapp v. Dagg*, 18 How. Pr., 165; *Colegrove v. Railroad Cos.*, 6 Duer, 408–411; *Chapman v. Railroad Co.*, 19 N. Y., 342–344.

RYAN, C. J.   I.  There is no error in the admission or exclusion of evidence, to disturb the judgment.

Notice of the insufficiency of the highway, or reasonable opportunity of knowing it, was necessary to charge the appellant. Express notice to the authorities of the city was plainly proper. *Harper v. Milwaukee*, 30 Wis., 365.   And the evidence offered that the authorities of the city, upon actual view, were satisfied with the condition of the highway, was clearly inadmissible to excuse the appellant.   Sec. 1 of chapt. 5 of the charter, chapt. 237 of 1873, does not, if it could, make the judgment of the common council conclusive of the sufficiency of the street.

The evidence offered that the appellant had expended all the means at its disposal in repairing its streets, had no tendency to excuse it.   Every municipality is bound, at its peril, to keep its highway in sufficient repair, or to take precautionary means to protect the public against danger of insufficient highways.   *Seward v. Milford*, 21 Wis., 485;  *Ward v. Jefferson*, 24 id., 342; *Burns v. Elba*, 32 id., 605; *Green v. Bridge Creek*, 38 id., 449.

The *res gestæ* of this accident did not go with the team to the livery stable, but remained in the *locus in quo* with the injured woman.   And the declarations of the driver to the liveryman, were a subsequent narrative of the *res gestæ*, not admissible in chief as offered; though admissible, upon proper foundation, to contradict the driver.   *Sorenson v. Dundas*, 42 Wis., 642.

II.  The charge of the learned judge who presided at the trial in the court below, was severely criticised by the learned

counsel of the appellant. And it must be confessed that some parts of it are unaccountably confused and inaccurate.

So far as it relates to the negligence of the appellant, it is unnecessary to review it. It may be doubted whether any inaccuracy of the charge on that point would warrant the reversal of the judgment. For there is no controversy or doubt as to the condition of the highway. It was such that the court would have been warranted in holding it unsafe as matter of law. There was a depression in one of the traveled streets of the city. The authorities raised one-half in width of the street over the depression, by embankment some six feet high in the middle and gradually lessening towards each end. The side of the embankment next the other half of the street, left on its natural level, was precipitous and rough, without railing or barrier to protect travelers from being precipitated over it. It is claimed that each half of the street was sufficient for travel; and that because each half was safe by itself, the whole street was safe. This is a great and mischievous error. A traveled highway must be reasonably safe for travel over its whole surface. *Cremer v. Portland*, 36 Wis., 92. A road cut in two by a precipice is almost equally unsafe in fact, is equally insufficient in law, whether the precipice be across or along the highway. Although towns are not generally bound to keep the full width of their highways fit for travel, but only a sufficient width, yet a country road passing along an embankment of the width of that in this case, with a side or sides as precipitous and as unprotected, would under all ordinary circumstances be held dangerous. *Houfe v. Fulton*, 29 Wis., 296; *S. C.*, 34 id., 608; *Jackson v. Bellevieu*, 30 id., 250; *Kelley v. Fond du Lac*, 31 id., 179; *S. C.*, 36 id., 307; *Burns v. Elba, supra*; *Hawes v. Fox Lake*, 33 Wis., 438. *A fortiori*, a traveled street in an incorporated city. *Wheeler v. Westport*, 30 Wis., 392. In this case the rule applies with peculiar force; for the dangerous character of the street did not come by nature or by accident, but by the will-

ful act of the city authorities. *Milwaukee v. Davis*, 6 Wis., 377; *Harper v. Milwaukee, supra*.

But as they bear upon the question of contributory negligence, the inaccuracies of the charge are important.

The learned judge did not correctly state the rule of proof of contributory negligence, in actions for negligence, settled in *Hoyt v. Hudson*, 41 Wis., 105. It does not put the *onus probandi*, in all cases upon the defendant, as the learned judge appears to have stated. The rule intended in that case is, that a plaintiff, giving evidence of the negligence of the defendant and the resulting injury to himself, without showing any contributory negligence, is bound to go no further; he is not required to negative his own negligence. If, however, the plaintiff, in proving the injury, shows contributory negligence sufficient to defeat the action, he disproves his own case of injury by the negligence of the defendant alone. If the plaintiff's evidence leave no doubt of the fact, his contributory negligence is taken as matter of law to warrant a nonsuit. If the plaintiff's evidence leave the fact in doubt, the evidence of contributory negligence on both sides should go to the jury. This was perhaps not as clearly stated as it might have been, and has been criticised. Properly understood, the rule in *Hoyt v. Hudson* makes no confusion between the burden of proof and the weight of evidence; is sounder in principle and easier in practice than the rule in Massachusetts which, with great deference for that court, this court then declined to adopt. The true ground of reversal in *Hoyt v. Hudson* was, that the charge of the court submitted the question of contributory negligence to the jury, when there was no evidence of contributory negligence on either side; giving the jury to believe that the plaintiff was bound affirmatively to disprove it.

The learned judge instructed the jury that if the driver of the carriage was so grossly negligent or careless as to contribute to the injury, the respondent could not recover. Travel-

ers are always held to the exercise of ordinary care. Slight want of ordinary care will defeat an action for injury caused by defect in a highway. This was perhaps what the charge intended. The learned judge told the jury elsewhere that the driver was held to ordinary prudence; but said, in the same connection, that if this person was driving as one ordinarily drives, not thinking of danger, and thus met the accident, he was guilty of no negligence. All this, taken together, is not very clear. Ordinary care in such a case, is care against danger. It is carelessness, not care, which in such a case has no thought of danger. Driving in the dark without thinking of danger, as one " whistling for want of thought," is surely not ordinary care. The fair inference, perhaps, from the somewhat loose *dicta* of the charge, the inference which the jury probably drew, is, that want of ordinary care to defeat the action must be gross; dealing with gross negligence as gross want of ordinary care. The degree of contributory negligence which will defeat an action has been repeatedly settled by this court, and may be given to juries without difficulty in plain and unambiguous terms. *Dreher v. Fitchburg*, 22 Wis., 675; *Ward v. Railway Co.*, 29 id., 144; *Wheeler v. Westport, supra; Hammond v. Mukwa*, 40 Wis., 35; *Griffin v. Willow, ante,* p. 509.

The charge is still more unhappy in giving the measure of proof to establish contributory negligence on the part of the driver. The learned judge tells the jury, in effect, that contributory negligence must be proved conclusively to their minds. Conclusive presumptions relate rather to matters of law than matters of fact. When a judgment determines a fact, the fact is conclusively established between the parties. But it is conclusive, by force of the judgment, not by force of the evidence on which the judgment proceeds. Evidence cannot well establish litigated questions of mere fact conclusively. Juries are never held to find mere matters of fact on conclusive evidence. In civil causes, preponderance of evi-

dence is sufficient. In criminal prosecutions, guilt is to be proved not conclusively, but only beyond reasonable doubt.

There is nothing elsewhere in the charge to obviate or qualify this error. Taken with the rule of the burden of proof, as the jury must have understood it, the charge is, that the evidence given by the appellant must conclusively satisfy the jury of contributory negligence to defeat the action. It may be, as was urged, that the verdict would not have been different, had the rule of contributory negligence, and of the evidence sufficient to establish it, been correctly given to the jury. This court cannot usurp the function of the jury to say so. There was some evidence — it would be improper to say of what weight — tending towards contributory negligence. And the verdict cannot be sustained under the charge, if the respondents are answerable for the negligence of the driver.

III. The case appears to have been tried in the court below upon the theory that the right of the respondents to recover would be defeated by contributory negligence of the driver, without personal negligence of the female respondent; as seems to have been taken for granted by this court in *Houfe v. Fulton, supra.* But the learned counsel for the respondents takes the position here, that his clients are entitled to recover, notwithstanding negligence of the driver; no evidence in the case tending to attribute personal negligence to the injured woman herself. And there is some authority for his position.

When injury is caused by the concurring negligence of two common carriers, it has for many years been a question, whether the negligence of the carrier by which a passenger is carried can be imputed to him as contributory negligence in an action against the other carrier. There appears to be no uniform rule of decision. In England it seems to have been held that the negligence of his own carrier will defeat the action of a passenger against the other carrier. *Bridge v. G. J. Railway Co.*, 3 M. & W., 244; *Thorogood v. Bryan*, 8 C. B.,

115; *Cattlin v. Hills*, id., 123.   In New York, the rule appears to be that the injured passenger may recover in such a case against either or both of the carriers.   *Chapman v. N. H. Railroad Co.*, 19 N. Y., 341; *Colegrove v. N. Y. & N. H. Railroad Co. & N. Y. & H. Railroad Co.*, 20 id., 492. So it has been held in New Jersey that negligence of a carrier cannot be imputed to a passenger carried by it to defeat his recovery against the other carrier.   *Bennett v. N. J. Railroad Co.*, 36 N. J., 225.   Pennsylvania seems inclined to lean somewhat towards the English rule.   *Lockhart v. Lichtenthaler*, 46 Pa. St., 151.   In this case, THOMPSON J., cites a Michigan case* which we have not been able to find, apparently favoring the New York rule; and intimates that the doctrine of *Smith v. Smith*, 2 Pick., 621, *C., C. & C. Railroad v. Terry*, 8 Ohio St., 570, and *Puterbaugh v. Reasor*, 9 id., 484, are in accord with the rule of the English Common Pleas, which we confess we are not quite able to perceive.

Aside from questions of public policy affecting the duty and liability of common carriers, which enter into some of these cases, the question appears to be how far common carriers can be considered as agents of passengers carried by them. We think that there is no case in this court bearing on this question, and it is unnecessary here to indicate an opinion upon it.   It is proper to say, however, that, in the present state of society, it is a substantial necessity for all or most travelers to avail themselves of public conveyances; and that there might be great difficulty in applying to them the rule of personal trust and agency applicable to private conveyances.

In the latter case, when the agency of a person in control of a private conveyance is express, there is no difficulty in the rule.   The contributory negligence of the servant will defeat the master's action for negligence against a third person. And it seems that there ought to be as little difficulty in the

---

* Since this opinion was written, this case was found to be incorrectly quoted. It is *D. L. & N. Turnpike Co. v. Stewart*, 2 Metc., Ky., 119.

rule when the agency is implied only. One voluntarily in a private conveyance, voluntarily trusts his personal safety in the conveyance to the person in control of it. Voluntary entrance into a private conveyance adopts the conveyance for the time being as one's own, and assumes the risk of the skill and care of the person guiding it. *Pro hac vice*, the master of a private yacht or the driver of a private carriage is accepted as agent by every person voluntarily committing himself to it. When *paterfamilias* drives his wife and child in his own vehicle, he is surely their agent in driving them, to charge them with his negligence. It is difficult to perceive on what principle he is less the agent of one who accepts his or their invitation to ride with them. There is a personal trust in such cases, which implies an agency. So several persons voluntarily associating themselves to travel together in one conveyance, not only put a personal trust in the skill and care of that one of them whom they trust with the direction and control of the conveyance, but appear to put a personal trust each in the discretion of each against negligence affecting the common safety. One enters a public conveyance, in some sort, of moral necessity. One generally enters a private conveyance of free choice; voluntarily trusting to its sufficiency and safety. It appears absurd to hold that one voluntarily choosing to ride in a private conveyance, trusts to the sufficiency of the highway, to the care and skill exercised in all other vehicles upon it, to the care and skill governing trains at railroad crossings, to the care and skill of everything except that which is most immediately important to himself; and trusts nothing to the sufficiency of the very vehicle in which he voluntarily travels, nothing to the care or skill of the person in charge of it. His voluntary entrance is an act of faith in the driver; by implication of law, accepts the driver as his agent to drive him. In the absence of express adjudication, the general rules of implied agency appear to sanction this view.

*Beck v. E. R. Ferry Co.*, 6 Roberts., 82, turned upon the

liability of a steam vessel for the death of one of a party in a small boat, apparently a pleasure boat. Contributory negligence of the party in the boat was a question in the case. And it is said: "The deceased was undoubtedly chargeable with any neglect of his comrades, as well as his own, to do every act to avoid danger and insure safety, at least unless he did all he could to repair the deficiency. None of them stood in the light of either employer or employed to the other; it was a joint expedition, in which each was liable for the acts and omissions of the other, unless he took some separate steps to repair or prevent the result of the negligence of the others."

This case is not expressly overruled, but seems rather to be approved in *Robinson v. N. Y. C. Railroad Co.*, 66 N. Y., 11. But the two cases appear none the less to conflict in principle. *Robinson v. Railroad Co.* turned upon liability for injury by a railroad train to a female, voluntarily riding with a male friend on his invitation. The court holds that the action was not defeated by the man's contributory negligence. The court remarks that the man and woman were not engaged in a joint enterprise, in the sense of mutual responsibility for each other's acts, as in *Beck v. Ferry Co.* It is difficult to comprehend the distinction. The court says that it was the case of a gratuitous ride, by a female, upon the invitation of the owner of a horse and carriage. Doubtless; but there was the same mutual agreement of the two to travel together, as of the several to sail together, in *Beck v. Ferry Co.* These were, in contemplation of law, as much in the same boat as those. A woman may and should refuse to ride with a man, if she dislike or distrust the man, or his horse, or his carriage. But if she voluntarily accept his invitation to ride, the man may, indeed, become liable to her for gross negligence; but as to third persons, the man is her agent to drive her — she takes man and horse and carriage for the jaunt, for better, for worse.

Speaking of the position of counsel, that the woman voluntarily entrusted her safety to the man's care and prudence, and

exposed herself to risk from his negligence or want of skill, the court says: "If this argument is sound, why should it not apply in all cases to public conveyances as well as private? The acceptance of an invitation to ride creates no more responsibility for the acts of the driver, than the riding in a stage coach, or even a train of cars." The same court in another case truly declares that traveling by public lines of carriage has become a practical necessity. And this question appears to be briefly but sufficiently answered by itself in *Chapman v. N. H. Railroad Co., supra.* Speaking of the plaintiff in that case, it is said: "He was a passenger on the Harlem cars . . . . . . bound to submit to the regulations of the company and the directions of their officers. . . . . . . He had no control, no management, even no advisory power, over the train on which he was riding. Even as to selection, he had only the choice of going by that railroad or by none." Indeed, it seems little less than idle to compare the relation of a woman voluntarily riding for her pleasure with her lover, friend or relative in his carriage, with the relation of a passenger to the carrier on whose cars or vessel he is practically obliged to travel.

To the same effect are *Knapp v. Dagg*, 18 How. Pr., 165, and *Metcalf v. Baker*, 11 Abbott, N. S., 431, also cited by the respondent's counsel, on which particular comment is unnecessary.

These are all the cases cited by counsel. The question was suggested rather than argued on one side, and not mentioned on the other. We have had brief opportunity to search for adjudications on the subject: another instance of the dependence of the court on the bar. We have found but one other case, a very elaborate one, though this point is decided rather than discussed, as in *Houfe v. Fulton, supra.* The facts of the case make it a very strong one. A female servant was riding with her master in his wagon, which was wrecked by a railroad train. The master was guilty of contributory negli-

gence, against which the servant appears to have warned him. Yet his contributory negligence was held to defeat her action against the railroad company. *L. S. & M. S. Railroad Co. v. Miller*, 25 Mich., 274.

This view appears to be sounder in principle and safer in practice than the rule in *Robinson v. Railroad Co.* And this court adheres to the rule of decision in *Houfe v. Fulton.*

*By the Court.* — The judgment is reversed, and the cause remanded to the court below for a new trial.