## William E. Detwiler v. The City of Lansing.

*Municipal corporations—Defective bridges—Liability.*

A city which permits a private bridge, erected in a public street and by the side of a public bridge, to remain as an apparent and continuing invitation to the public generally to travel over it, is charged with the duty of keeping it in a reasonably safe condition for such travel.

Error to Ingham. (Person, J.) Submitted on briefs March 8, 1893. Decided May 31, 1893.

Negligence case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Charles F. Hammond,* for appellant.

*Q. A. Smith (Parkinson & Day,* of counsel), for plaintiff.

MONTGOMERY, J.   Plaintiff sued and recovered for injuries received from the falling of a bridge claimed to be in Wall street, in the city of Lansing.   Numerous errors were originally assigned, but all are now abandoned excepting those which relate to the rulings of the circuit judge hereinafter specifically referred to.

The testimony tended to show that Wall street was extended across a mill-race many years ago, to connect with a narrow street called "Race Street," on the west bank of the canal; that about the year 1854 a bridge across this canal was constructed, substantially across the center of the street, by the township authorities, which bridge has since been maintained by the township, and later by the authorities of the city of Lansing.   Shortly after the completion of this public bridge over the race in the center of Wall street, the owners of a mill called the "Hart Mill," which mill was located on the southerly line of Wall street, constructed another bridge, on the south side of the public bridge, entirely within the lines of the street, and filling the space between the first bridge and the south line of the street.   This bridge was evidently constructed with a view to furnish easy access to the mill.   It was usually referred to by the public as the "Hart Bridge." The east end of the bridges rested on the same level.   The Hart bridge was raised a little above the public bridge towards the west end.   There was evidence tending to show that the public used the Hart bridge and the city bridge indiscriminately, and that the use of the Hart bridge was not confined to those who had business with the Hart mill, but that it was used by the public generally. There was no sign or warning to the public not to make use of the Hart bridge.   The approaches to the two bridges were equally inviting to the public, as appears by the photographs of the scene which were used upon the trial and have been produced in this Court.

At the close of the testimony the defendant requested the circuit judge to charge as follows:

" The undisputed evidence shows that the adjoining land-owner has continuously used the land upon which the bridge in question was located for a period commencing before the building of the first bridge thereon and continuing until the present time; that such land-owner has never yielded possession thereof to nor has the city asserted dominion over such land."

And, in case that request was refused, then the following:

" If the jury find from the evidence that the adjoining land-owner has continuously used the land upon which this bridge was located for a period commencing before the building of the first bridge and continuing up to the present time, that he has built and maintained a structure thereon, and that he has never yielded the possession thereof to nor has the city asserted dominion over such property, then the plaintiff cannot recover in this suit."

The learned circuit judge refused these requests, but did charge the jury as follows:

" Even if such bridge [referring to the Hart bridge] was in the public street, it must be conceded that it was built by private individuals, and was maintained by private individuals, and that the city had refused to consider the bridge a public structure; and, although built in the public street, if it was simply and solely an appendage to Hart's mills, and only useful as connected with Hart's mills, and to the public only as dealing with Hart's mills, and was not, during the time it has stood there and up to the time of the accident, useful to the public generally, and used by them generally, in the course of ordinary travel along said street to and from places other than Hart's mills, then the city would not be liable for the injuries suffered by the plaintiff through the falling of said bridge. But, on the other hand, if said bridge stood in the public highway and appeared to be part thereof, and the approaches from the traveled part of the street led directly thereto, and it appeared to any one traveling along the highway to be a part of the street in ordinary use, and if it had been and was in actual use and utility generally to the traveling

public, and used by the general traveling public, then the city, if it had erected at or near the bridge no visible sign or monument warning the public that such bridge was not a part of the street, was under a duty, so long as it permitted the bridge to remain in and as a part of the street, subject to such general use and utility, to ke p the same, or see that the same was kept, in reasonable repair, so that it would be reasonably safe and convenient for public travel."

We think these instructions embody the law of the case. There was testimony tending to show that the public had, by the continued use of this bridge, acquired a right to use it, and that it was used by the public as a matter of right, and had been for a sufficient period for the public to have acquired a prescriptive right therein, even had the fact been that the owner of the mills was asserting an adverse possession. But the ground upon which the recovery was had in the case was that the circumstances showed that the public were invited to travel over that portion of the highway in which the "Hart Bridge," so called, was located. The duty imposed upon cities is to maintain that portion of the highway in reasonably safe condition which is worked for travel. There is no reason why the same rule should not apply to structures which are built across streams. The general rule is that a liability occurs if one is injured in traveling upon a public highway in that portion of the highway which appears to be open for public travel; in other words, the township is liable if the injury occurs in that portion of the road over which there is an apparent invitation to travel. The ruling of the circuit judge is sustained, we think, by the following cases: *Potter v. Castleton,* 53 Vt. 435; *Saulsbury v. Village of Ithaca,* 94 N. Y. 27; *Jewhurst v. City of Syracuse,* 108 Id. 303 (15 N. E. Rep. 409); *Estelle v. Village of Lake Crystal,* 27 Minn. 243 (6 N. W. Rep. 775); *State v. Town of Campton,* 2 N. H. 513; *Barnes v. Town,*

*of Newton,* 46 Iowa, 567; *Moreland .v. Mitchell Co.,* 40 Id.
394; *Newlin Tp. v. Davis,* 77 Penn. St. 317; *Shartle v.
Minneapolis,* 17 Minn. 308.    See, also, 2 Thomp. Neg. 769,
where it is said:

" Where the limits of the highway are not indicated by
any visible objects, and there is nothing to show a person
driving thereon in the evening that. the course he is pursu-
ing is not within the way intended for public travel, the
town is liable for an accident to a traveler resulting from
a defect within the general course and direction of travel
where travelers are accustomed to pass along the highway,
although without the limits of the located way, if so near
as to render the traveling there dangerous, in the condition
in which it is at the time of the accident, and there is
nothing to give travelers notice of the defect until too
late to avoid it."

So, in a case where an open and well-beaten path led
from the traveled way to an apparently safe and con-
venient watering-place by the side of the way, and within
the limits of the road as laid out, but which was in fact
a deep and miry pit covered with water, and the horse of
a traveler was turned to it to drink, but fell into it and
was drowned, the town was held liable to pay, under the
provisions of a statute similar to ours.    *Cobb v. Standish,*
14 Me. 198.

The jury here found, in effect, that the city permitted
the bridge to remain as an apparent and continuing invita-
tion to the public generally to travel over it.    We think
. the city was properly charged with negligence.

The judgment will be affirmed, with costs.

· The other Justices concurred.