ANNA SEVERA, APPELLEE, v. VILLAGE OF BATTLE CREEK, APPELLANT.

FILED DECEMBER 10, 1910.   No. 16,224.

1. **Municipal Corporations: CARE OF SIDEWALKS: LIABILITY FOR INJURIES.** A municipal corporation cannot delegate the construction and care of its sidewalks to a private individual or corporation, and thereby evade its responsibility for such care and supervision, and thus escape liability for any damage resulting from the failure of the person or corporation, to whom such care and supervision are delegated, to use that reasonable care and diligence to keep such sidewalks in a reasonably safe condition for travel, which devolve primarily upon the municipal corporation itself.

2. **Witnesses: CROSS-EXAMINATION.** Where, in an action for injuries from a defective sidewalk, the defense is interposed that the village never had any knowledge or notice, prior to the accident, of the defective and dangerous condition of said sidewalk, and upon the trial such village introduces one of its trustees as a witness, it is not error to permit the interrogation of such witness, upon cross-examination, as to statements made by him a few days after the accident, to the effect that prior to the accident he had called the attention of his associate trustees, during

a meeting of the board, to the dangerous condition of such sidewalk and the necessity existing for its repair.

3. ———: IMPEACHMENT. And in such a case, if such witness denies having made such statement, it is not error to permit plaintiff, upon rebuttal, to impeach such testimony.

4. Trial: INSTRUCTIONS. This court will not reverse a judgment for the refusal of an instruction, where the substance thereof has been given in other instructions.

5. Appeal: VERDICT: CONFLICTING EVIDENCE. "A verdict rendered on substantially conflicting evidence, and approved by the trial court, will not be set aside on the ground that it is not sustained by adequate proof." *Brong v. Spence*, 56 Neb. 638.

APPEAL from the district court for Madison county: ANSON A. WELCH, JUDGE. *Affirmed*.

*Mapes & Hazen*, for appellant.

*Isaac Powers, H. F. Barnhart* and *H. H. Kilburn*, contra.

FAWCETT, J.

Plaintiff alleges that on May 17, 1906, while walking on the sidewalk along the east side of Fourth street, commonly known as Depot street, in defendant village, she stumbled against a plank of said sidewalk, which her brother, who was walking with her, "had accidentally raised before her by stepping on the end projecting beyond the stringer," whereby plaintiff was tripped and thrown with great force and violence to the sidewalk, as a result of which she was greatly and permanently injured; that the sidewalk was defective in construction and had been allowed to become and remain out of repair, so that numerous planks of the walk were loose, and the nails holding others were easily drawn out by a person stepping on the end of the planks which projected for a long distance over and beyond the stringers upon which they were laid; that of the rotten and defective condition of the stringers and the dangerous condition of said sidewalk at the point where the accident

occurred "defendant then and for a long time previously had constructive and actual notice, and in not repairing the same or causing it to be done, or so providing as to prevent or warn persons from passing over the same and in and about the premises, was guilty of gross negligence and want of care;" that as a result plaintiff was so badly injured that she will be a cripple for life, to her damage in the sum of $5,000, for which she prays judgment. The answer alleges, first, that the petition does not state facts sufficient to constitute a cause of action; second, admits that the defendant is a municipal corporation as alleged in the petition; and, third, a general denial. There was a verdict and judgment for plaintiff, and defendant appeals.

The errors relied upon and discussed in defendant's brief are: "(1) That the sidewalk in question was not upon a street or alley within said village, but a private walk over which the village had not exercised authority or control. (2) An attempt was made and permitted by the court, over defendant's objections, to impeach Peter Neuark, a witness for defendant, with rebuttal testimony, upon a fact brought out on cross-examination, collateral and immaterial to the issues. (3) The refusal of the court to give instructions first, third, and sixth, requested by the defendant. (4) The verdict is not sustained by sufficient evidence." We will consider these assignments in the order named.

1. Fourth street, or Depot street, as it is sometimes called, is laid out upon the section line between section 1, town 23, range 3, and section 6, town 23, range 2. An inspection of the plats introduced in evidence would indicate that it runs from the quarter section corner between the two sections above named through the central part of the village north to the section corners between said sections; that some 500 or 600 feet south of the section corners the street crosses the right of way of the Chicago & Northwestern Railway Company. There is a continuous sidewalk on the east side of the street from the main part of the village north to the depot of said railway company.

Just before reaching the railroad right of way, Fourth street crosses Front street. The evidence shows that the village has at all times exercised supervision and control over the sidewalk in question from the business center to the north line of Front street, which is the south line of the railway company's right of way, and that that portion of the walk from the north line of Front street to the depot was constructed by the railway company, and that the company has at all times assumed to keep it in repair. There is no substantial evidence to show that the defendant ever had anything to do with either the construction or repair of that portion of the walk. It is undisputed, however, that the sidewalk upon the right of way is a continuation, upon the same alignment, of the sidewalk constructed and maintained by the village south of the right of way, and that it is within the limits of Fourth street. While it appears that the sidewalk does not extend north of the depot, but terminates at that point, it is undisputed that Fourth street extends across the right of way, through what is designated upon one of the plats as "Pioneer Township Site Co.'s Second Addition to Battle Creek," to the north section line of the sections referred to. The point where plaintiff sustained her injury was about half way between the south line of the right of way and the tracks of the railway company, so that it is undisputed that the accident occurred upon that portion of the sidewalk which had been constructed by the railway company. The section line road north of the northern terminus of Fourth street is the main traveled road leading into the village from the north, and is the road over which the people living north enter the village. There is no evidence that Fourth street, where it crosses the railroad right of way, or, more properly speaking, where the right of way crosses it, has ever been vacated, or the control over it surrendered to the railway company. It is clear, therefore, that this street, for its entire length north and south and across the right of way, is one of the public streets of defendant. It is stipulated in the record that "the

place where the accident occurred was at the time of said
accident complained of, and now is, within the corporate
limits of said village, and that the walk upon which said
alleged accident occurred is within the said corporate
limits." The question presented, therefore, is whether the
fact that this sidewalk was constructed and its repairs as-
sumed by the railway company, and the further fact that
the village never exercised any care and supervision over
it, relieves the defendant from liability for any dangerous
defects occurring and permitted to remain upon such por-
tion of the walk, of which defendant had actual notice, or
which had existed for such a length of time as to consti-
tute constructive notice of such dangerous defects. De-
fendant contends that such is the law. In this contention
we cannot concur.

In *Brown v. Incorporated Town of Chillicothe,* 98 N.
W. 502 (122 Ia. 640), it is held: "Where, in an action for
injuries from a defective sidewalk, it appears that the
sidewalk was in the proper place for a sidewalk—along
one of the streets of the town—and had been there for a
considerable time, it will be presumed that it was there by
the town's consent.

"Where a town allows a sidewalk along its street to be
built for the use of the public, and it is so used, it becomes
the town's duty to see that it is kept in a safe condition."
The opinion fully sustains the above quotations from the
syllabus.

In *Johnson v. City of Milwaukee,* 46 Wis. 568, the sylla-
bus reads: "In an action for injuries caused by the de-
fective condition of a foot-bridge or apron crossing a gut-
ter in a city street, it appeared that the apron was built by
the owner of adjoining property, without consent of the
city, near to but not directly in the line of a street cross-
ing; and that the city had never formally adopted it, nor
made any repairs upon it; but there was evidence that it
had existed there, and been actually used as part of a pub-
lic thoroughfare, for a considerable length of time, with
knowledge of the city and without objection on its part.

*Held,* that proof of these facts would create a presumption that the city had adopted the apron as part of the street crossing, and had become liable for injuries caused by a defective condition of the apron, of which it had notice; and that the continuance of such condition for several weeks would create a presumption of notice." In the opinion on p. 570 the court say: "We are of the opinion that some of the instructions asked on the part of the plaintiff in this case were proper, and should have been given as requested. For instance, the first instruction, which was to the effect that if the jury should be satisfied, from the testimony, that, before and at the time of the accident, the general line and route for travelers on foot was over the place and crossing where the accident happened, and the crossing, including the place where the accident happened, was in continual use as a thoroughfare for travelers going back and forth, and the same was there several weeks or months before the accident, then, so far as this case was concerned, the question as to who made the crossing or any part of it, or placed it where it was, is immaterial, and that the plaintiff was under no obligation to ascertain or inquire who built the crossing or cross-walk, or how it came there. This instruction was applicable to the testimony; for it cannot be denied that there was abundant evidence tending to prove, and from which the jury might have found, that the public travel for persons on foot passed over the cross-walk which leads from the Fourth ward market in a northwesterly direction, to the sidewalk near the junction of Second and West Water streets, and over the platform or bridge where the plaintiff fell and broke his leg. If that crossing, including this bridge, platform or apron, as it is called, was in fact a thoroughfare in constant use by the public, the city was bound to keep it in repair, and was responsible to a person injured by reason of its failure to perform that duty, whether the city originally built the bridge or not. The correctness of this view would seem to be too obvious to need comment or illustration. For surely the responsibility or irresponsibility

of the city to keep a thoroughfare, or, in other words, a public crossing, in repair, cannot be made to rest or depend upon the fact that the city built it in the first place, or authorized it to be built. And so, if the bridge or apron was originally built by the owner of the adjoining lot without objection on the part of the city, and the city suffered it to remain and to be used by the public as a public way or crossing, the presumption would be that the city had adopted the structure as a part of the crosswalk. Under these circumstances the city would certainly be liable for an injury occurring by reason of the bridge or platform being in a dangerous condition."

*Detwiler v. City of Lansing,* 95 Mich. 484, is squarely in point, and is to the same effect. *Foxworthy v. City of Hastings,* 25 Neb. 133 and 31 Neb. 825, are to the same effect. *City of McCook v. Parsons,* 77 Neb. 132, cited by defendant, does not modify or destroy the force of *Foxworthy v. City of Hastings, supra.* In the *Parsons* case the opinion shows that "it does not appear from the petition either that the depot grounds or the place where the accident occurred were within the corporate limits of the defendant city, and the objection to the introduction of evidence should have been sustained." This is sufficient to show that the *Parsons* case is clearly distinguishable from the *Foxworthy* case and from the case at bar.

In harmony with the above cases, which meet with our entire approval, we hold that a municipal corporation cannot delegate the construction and care of its streets and sidewalks to a private individual or corporation, or even to a quasi-public corporation, and thereby evade its responsibility for such care and supervision, and thus escape liability for any damage resulting from the failure of the person or corporation, to whom such care and supervision are delegated, to use that reasonable care and diligence to keep such streets or sidewalks in a reasonably safe condition for travel, which devolve primarily upon the municipal corporation itself. It matters not that the railway company in the present case is the

owner of the land within its right of way abutting upon the street or sidewalk at the point where the accident occurred. So far as the defendant is concerned, it is in no different or better situation than it would be if such abutting land were owned by a private individual who had himself constructed such sidewalk and had assumed to keep it in repair. We think it will not be claimed that in such a case the village would be relieved of liability for the failure of such abutting landowner to properly perform the duty which he had assumed.

2. The position taken by the defendant throughout the trial was that its trustees or managing officers never had, prior to the accident, any knowledge or information as to the dangerous condition of the sidewalk in question. While introducing her evidence in chief, plaintiff attempted to show by the witness, Lambert Kerbel, a brother of plaintiff, that shortly after the accident he had a conversation with Peter Neuark, who at that time was a member of the village board of trustees, at which he, Neuark, stated that he had himself called the attention of "the village council" to the condition of the walk during a session of such board. The defendant objected to the evidence as incompetent, irrelevant and immaterial, and for the reason that no proper foundation had been laid. The objection was sustained. While defendant was making its case, it introduced Peter Neuark as a witness. Upon cross-examination of Mr. Neuark he was asked: "Mr. Neuark, I will ask you if it isn't a fact that on or about the 24th day of May, 1906, about a week after the accident that plaintiff complains of, if you didn't say in the saloon of Lambert Kerbel and in the presence of Lambert Kerbel, before this accident that you speak of, tell them that if they didn't repair that walk they would have damages to pay?" Objected to as incompetent, irrelevant, and immaterial, and not proper cross-examination. The objection was overruled, and the witness, after first saying that he did not remember, finally answered, "I did not." Plaintiff then in rebuttal placed

Lambert Kerbel upon the stand, and the following examination was had: "Q. Did you have a conversation with Mr. Neuark a few days after the accident that the plaintiff has sustained on the sidewalk, in your saloon at Battle Creek, regarding the condition of that sidewalk? (Objected to and overruled.) A. Yes, sir. Q. Now, I will ask you if in that conversation the witness Neuark didn't say to you that he had a talk with the village board regarding the condition of this walk where Mrs. Severa received the injury, and that he said to the board that unless some action was taken to repair that walk that the city would have damages to pay? (The defendant objects to the question because the same is incompetent, irrelevant, and immaterial, and not proper impeachment testimony, no proper foundation laid. Objection overruled by the court, to which ruling the defendant excepts.) By the court: This is simply for the consideration as to its bearing upon his statement that he had no knowledge of any bad condition of the walk. A. He did. (The defendant moves to strike the answer as incompetent, irrelevant, and immaterial, no proper foundation laid. Motion overruled by the court, to which ruling the plaintiff excepts.)" It is strenuously insisted that this was error, upon the theory that it was a collateral fact brought out on cross-examination and immaterial to the issues. This contention must fail. We do not think this testimony was immaterial or that it was collateral in the strict sense of that term. The defendant was insisting that the village board never had any knowledge or notice of the defective condition of this sidewalk. Testimony, showing that one of the village board had stated within a week after the accident that he had at one time called the attention of the board, while it was in session, to the dangerous condition of the walk, and had warned them that if something were not done they were liable to have to pay damages on account of it, was, we think, fair rebuttal of the defense sought to be interposed. If any error was committed by the court as to this testi-

mony, it probably was in refusing to permit plaintiff to offer the testimony when introducing her case in chief; but, be that as it may, it certainly was not error to receive it in rebuttal.

3. This contention of defendant must also fail for the reason that everything contained in the three instructions tendered is substantially and fairly covered by the court in its instructions 5, 6, 12 and 13, given to the jury.

4. That the verdict is not sustained by sufficient evidence. Upon this point the evidence is conflicting. There is ample competent evidence in the record to sustain a verdict either way. In such a case, this court will not interfere. *Brong v. Spence*, 56 Neb. 638.

Finding no reversible error in the record, the judgment of the district court is

AFFIRMED.

ROSE, J., not sitting.